**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JERRY NEWMAKER; SUSAN
OLESEN,
         *Plaintiffs-Appellants*,

         v.

CITY OF FORTUNA; MAXWELL
SOETH; CHARLES ELLEBRECHT,
         *Defendants-Appellees.*

No. 14-15098

D.C. No.
4:12-cv-04675-PJH

OPINION

Appeal from the United States District Court
for the Northern District of California
Phyllis J. Hamilton, Chief District Judge, Presiding

Argued and Submitted March 14, 2016
San Francisco, California

Filed November 22, 2016

Before: William A. Fletcher, Johnnie B. Rawlinson,
and Andrew D. Hurwitz, Circuit Judges.

Opinion by Judge W. Fletcher

# SUMMARY[*]

## Civil Rights

The panel reversed the district court's summary judgment and remanded in a 42 U.S.C. § 1983 action in which plaintiffs alleged that City of Fortuna police officer Maxwell Soeth used excessive force when he fatally shot Jacob Newmaker during an attempted arrest.

Officer Soeth maintained in the district court that he shot Newmaker after Newmaker grabbed Soeth's police baton. The panel held that summary judgment is not appropriate in § 1983 deadly force cases that turn on the officer's credibility that is genuinely in doubt. The panel determined that the version of events offered by Officer Soeth and Sergeant Ellebrecht to the district court was materially contradicted by evidence in the record. The panel concluded that because this case required a jury to sift through disputed factual contentions — including whether the officers were telling the truth about when, why, and how Soeth shot Newmaker — summary judgment was inappropriate.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Dale K. Galipo (argued) and Eric Valenzuela, Law Offices of Dale K. Galipo, Woodland Hills, California, for Plaintiffs-Appellants.

Nancy K. Delaney (argued) and Nicholas R. Kloeppel, Mitchell Brisso Delaney & Vrieze LLP, Eureka, California, for Defendants-Appellees.

**OPINION**

W. FLETCHER, Circuit Judge:

Maxwell Soeth, a police officer in Fortuna, California, fatally shot Jacob Newmaker during an attempted arrest. In this 42 U.S.C. § 1983 case alleging excessive force, Officer Soeth maintained in the district court that he shot Newmaker after he grabbed Soeth's police baton. According to Soeth, Newmaker was standing upright and was swinging the baton violently toward Sergeant Charles Ellebrecht at head height when he was shot. According to Soeth, Newmaker then fell to the ground. Soeth maintained he shot Newmaker again as Newmaker was getting up and again swinging the baton.

The district court granted summary judgment to Officer Soeth based on qualified immunity. Because evidence in the record contradicts Soeth's testimony, we reverse and remand.

I.  Procedural Background

In 2012, Newmaker's parents ("Plaintiffs") filed this suit against the City of Fortuna, Officer Soeth, and Fortuna Police

Sergeant Ellebrecht.   Plaintiffs allege that Soeth used unconstitutionally excessive force by striking Newmaker multiple times with his police baton and then fatally shooting him.  Plaintiffs originally asserted various federal and state law claims, but eventually agreed to dismiss several of them, leaving only the excessive force and substantive due process claims against Soeth and a few state law claims against both the City and Soeth.

After excluding some of Plaintiffs' proffered evidence, the district court concluded on summary judgment that Officer Soeth was entitled to qualified immunity.  Based on Soeth's testimony that Newmaker had taken his police baton, the court concluded that "it was reasonable for Officer Soeth to conclude that Newmaker might use the baton in a dangerous way against Ellebrecht, merely by virtue of having it in his possession."  After granting summary judgment on the § 1983 claims, the district court dismissed the remaining state law claims without prejudice. Plaintiffs appeal the grant of summary judgment to Soeth.

## II.  Standard of Review

We review a district court's grant of summary judgment de novo.  *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1047 (9th Cir. 2009).  We review for abuse of discretion a district court's decision to exclude expert testimony and other evidence during summary judgment proceedings.  *See Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 813 (9th Cir. 2014).

## III.  Discussion

Because we are reviewing a grant of summary judgment in favor of defendant Soeth, we view the evidence in the light most favorable to Plaintiffs.  "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### A.  Evidence in the Record

#### 1.  Officer Soeth's Deposition Testimony

Officer Soeth testified in his deposition that Newmaker walked into the Fortuna Police Station at about midnight on the morning of March 16, 2012.  Newmaker told Soeth that unidentified people had just chased him down an alley and that he was afraid.  Soeth told Newmaker that he needed either to file a report or to leave the station.  Newmaker declined to file a report and asked for a ride home.  Soeth refused, and Newmaker left.  Newmaker was acting strangely, and Soeth thought he might be mentally impaired or on drugs.

About two hours later, while in a patrol car, Officer Soeth encountered Newmaker on a street in Fortuna.  Newmaker was fully clothed, wearing a jacket, but shoeless.  Newmaker told Soeth that he was going to the hospital and asked for a ride to his mother's house.  Soeth refused to give Newmaker a ride, but followed Newmaker until he arrived at his mother's house and went inside.  A check with dispatch to determine whether Newmaker was on probation or parole or had any outstanding warrants came up negative.

At about 6:00 a.m. that morning, Officer Soeth received a call at the station about a "male subject . . . banging on the doors and windows of an occupied dwelling." While Soeth went in his patrol car to investigate, Sergeant Ellebrecht spoke to the caller, who reported that the subject had left on a bicycle. The caller stated that the subject had said his "skin was crawling" and "[t]hat he was in contact with radiation." Ellebrecht relayed this information to Soeth. Soeth encountered Newmaker on a bicycle at an intersection. Newmaker was no longer wearing his jacket. Soeth attempted a stop, but Newmaker rode away.

Officer Soeth followed Newmaker and "called out" a pursuit. After about two blocks, Newmaker got off his bicycle and started running. Soeth got out of his patrol car and pursued on foot. Newmaker turned around and came back toward Soeth. Soeth ordered Newmaker to get on the ground. Newmaker responded by lying on the hood of a parked car. Soeth ordered Newmaker to get on the ground and show his hands. When Newmaker did not comply, Soeth physically forced him to the ground.

Officer Soeth stated in his deposition that he again ordered Newmaker to show his hands. When Newmaker did not comply, Soeth used his Taser in "drive" mode (without darts) to stun Newmaker in the lower back. Soeth stated that Newmaker reacted by grabbing the Taser with one hand and Soeth's leg with the other. Soeth stepped back, and Newmaker got up and ran away. Soeth again pursued Newmaker on foot. At some point, Newmaker had lost his pants. He was now naked from the waist down and wearing only a t-shirt. He had no weapon.

Officer Soeth stated in his deposition that Newmaker stopped running and assumed a "fighter's stance." Soeth pointed his Taser at Newmaker and told him to get on the ground. When Newmaker failed to comply, Soeth fired the Taser in "probe" mode (with darts). The darts hit Newmaker in the torso, and he fell onto his back. Soeth ordered Newmaker to roll on his stomach and put his hands on his back. When Newmaker failed to comply, Soeth activated another Taser cycle. Newmaker grabbed the Taser wires and bit through them.

Sergeant Ellebrecht, who had just arrived in a separate patrol car, joined Officer Soeth in the attempt to subdue Newmaker. Officer Soeth stated in his deposition that he hit Newmaker twice with his police baton to prevent him from getting up, although video from Ellebrecht's dashboard camera shows a greater number of strikes. Soeth stated that he then tried to close the baton to put it back in its holster, but he could not do so. He threw the baton to the edge of the sidewalk next to a fence. Ellebrecht succeeded in handcuffing Newmaker's right wrist. Soeth and Ellebrecht then dragged Newmaker onto the street behind a parked car, out of view of the dashboard camera. What happened next is at the core of this case.

The video taken by the dashboard camera shows Officer Soeth going to retrieve his baton from beside the fence and then returning behind the parked car. Soeth stated in his deposition that he intended to use the baton to pry Newmaker's left arm free so Ellebrecht could handcuff his left wrist. Soeth stated that Newmaker grabbed the baton and that he shouted, "He's got my baton." According to Soeth, Newmaker stood up and swung the baton "violently" and "aggressively" at Ellebrecht's head. Soeth stated in his

deposition that he then drew his firearm and told Newmaker to drop the baton. Soeth stated that he then shot Newmaker from a standing position in order to protect Ellebrecht. Soeth stated that Newmaker fell to the ground, either because he was shot or because he "was swinging so violently that he fell." Soeth stated that he shot Newmaker again as he was getting up and starting to swing the baton again. Soeth estimated that the time between the two shots was "[t]wo seconds tops" and could have been less than a second. The shots killed Newmaker.

### 2. Carol Harris's Declaration

A witness to the encounter, Carol Harris, provided a sworn declaration. Harris stated that she lived "directly to the south" of where Officer Soeth and Sergeant Ellebrecht were attempting to subdue Newmaker. She did not specify how far away she was. She stated that she "exited [her] residence and stood on the front porch from where [she] observed a man fighting in the street with officers[.]" She stated that she "either blinked or looked away for a moment." When she "looked back," one of the officers had drawn his gun and stated, "'Put the weapon down.'" That officer "again stated, 'Put the weapon down, put the weapon down.'" Harris stated that she "saw two muzzle flashes from the gun . . . , approximately two seconds apart[.]" "After the male was transported by ambulance from the scene, [she] observed items in the roadway, including one that had a handle and appeared to be 'telescoped' out[.]"

3.  Evidence Conflicting with Officer Soeth's Testimony

a.  The Hislop Interviews

The day after the shooting, Officer Soeth and Sergeant Ellebrecht were interviewed by Investigator Michael Hislop of the Humboldt County District Attorney's Office, accompanied by a detective from the Fortuna Police Department.  Before the interviews, Soeth and Ellebrecht had viewed the dashboard camera video.  Only after receiving suggestions from Investigator Hislop did Soeth and Ellebrecht arrive at the version of events they ultimately presented to the district court.

At the beginning of his first interview, Officer Soeth gave the following description of what happened after he and Sergeant Ellebrecht dragged Newmaker behind the parked car:

> I run back to the sidewalk, grab my baton, get towards the subject, go to initiate that move, that technique [of using the baton as a tool to pry Newmaker's left hand], he jerks his right hand out of [Ellebrecht's] grasp. Latches onto my baton with both hands.  I latch onto my baton with both hands.  We struggle.  Charles yells, 'Pepper spray him.' I said, "He's get — he's getting my baton."

> He jerks the batons [*sic*] out of my hand. I yell, "He's got my baton."  I create distance between me and him.  Draw my weapon, my firearm.  He is — he has the baton in both

hands and he's — he's just swinging it back
and forth towards Charles.

He takes a step or two towards Charles.
I'm ordering him to drop it. . . . Giving . . .
him orders to comply.

I shoot him twice. Subject drops.

Soeth stated that Newmaker was "aggressively swinging [the
baton] towards Charles" at about "head height" when he shot
him.

Near the end of the interview, Investigator Hislop
suggested to Officer Soeth that it might not have happened
the way Soeth had initially described it, with Newmaker
falling to the ground only after Soeth had shot him twice:

Investigator Hislop: Okay. So you shot two
shots and — let's go back to that real quick.
You shot two shots. And on the videotape
which you've watched . . .

. . .

[He's] doing this big overt swing towards
Sergeant Ellebrecht. You shoot him. And
then he falls down and he's getting back up
again. And then you shoot him again?

Maxwell Soeth: After seeing the video, I —
I believe that is what happened.

. . .

Investigator Hislop: Okay. Good. Anything else?

In his deposition approximately one year later, Soeth repeated the version of events suggested by Investigator Hislop.

Investigator Hislop next interviewed Sergeant Ellebrecht. Ellebrecht stated early in the interview, "I knew he had Soeth's baton. And at that point, I saw him, like, swing at me. And I remember backing up trying to get away from him. And then that's when Soeth fired." "It was head high. . . . And it was a full swing, so definitely head high at some point." Ellebrecht remembered two shots, resulting in Newmaker on his knees:

Investigator Hislop: Okay. So once Jacob [Newmaker] swung at you with the baton and you backed up, what happened right after that?

Charles Ellebrecht: That's when Officer Soeth who was a little bit away from Newmaker at that point. I don't know at what point he backed up. But he — I saw his gun and I remember him firing two shots.

. . .

Investigator Hislop: What happened to Jacob after that?

Charles Ellebrecht: He was on his knees[.]

Investigator Hislop then suggested to Ellebrecht the same sequence of events that he had suggested to Officer Soeth:

> Investigator Hislop:  You watched the video and in how he kind of lunges.  There's a large, like, lunge as you're backing up.

> Charles Ellebrecht:  I think it was right at — right at the same time Newmaker began swinging.

> Investigator Hislop:  Okay.  And the second shot —

> Charles Ellebrecht:  It was like less than a second later, if I recall correctly.  Like, it was pretty much back to back as much as I can remember.

> Investigator Hislop: Okay.  Now if — if you referred back to the video if you can, so when he does the big lunge and then he gets shot and it looks like he way over-extended and he fell.

> Charles Ellebrecht:  He —

> Investigator Hislop:  He fell and then again didn't seem like it stopped him.  He fell and then he started to get back up again.

> Charles Ellebrecht:  That, I think is — that might be when Soeth —

Investigator Hislop: Would it be possible that he shot once while he swung at you and then when he fell, he got back up and Soeth shot again?

Charles Ellebrecht:  It's possible.

Investigator Hislop:  Okay.  Okay.

Charles Ellebrecht: I don't remember.

Investigator Hislop interviewed Sergeant Ellebrecht again a month later, on April 19.  At the end of the first interview, Ellebrecht had said only that it was "possible" that Newmaker had fallen to the ground between shots.  Ellebrecht was still hesitant in the second interview, but he now recited, unassisted, the version of events that had been suggested by Hislop:

> Once Newmaker got the baton from Soeth, I guess he turned — he was kind of facing towards me.  And I remember him, like, coming down with it at me.  And that's when I — I tried backing up when he was swinging it at me.

> And then my recollection is that's when Soeth fired the first shot.  And I'm not one hundred percent positive.

> And then I remember Newmaker falling down, down to his knees, I guess.  And then seeing another shot.  I — I think after the

second shot, he started to get up. He fell. I remember him falling and trying to get up.

And then I guess the second shot went off, he tried to get up again. And then shortly later that's when he, like fell forward, like, on the pavement and had the baton.

### b. The Autopsy Report

The report from the autopsy performed on Newmaker's body conflicts with Officer Soeth and Sergeant Ellebrecht's version of events. When Investigator Hislop initially interviewed Soeth and Ellebrecht, no autopsy had been performed. The autopsy, performed three days later, showed that two bullets killed Newmaker. They both entered his lower back and traveled at thirty degree angles upward toward his chest. One bullet entered the left lower back, broke a rib, traveled through the left lung, and lodged in the left pectoral muscle. The other entered the right lower back, traveled through the lower right lung, lacerated two lower thoracic vertebrae, and lodged in the descending right aorta.

The video from Sergeant Ellebrecht's dashboard camera and Officer Soeth's own statements make plain that Soeth was standing upright, holding his gun at about chest level, when he shot Newmaker. Soeth claimed that he fired the first shot when Newmaker was standing upright, swinging the baton violently toward Ellebrecht, and the second shot as Newmaker was getting up off the ground, again swinging the baton. The autopsy report contradicts Soeth's testimony. The autopsy results can be explained only by Newmaker having been turned away from Soeth, bending over, and low to the ground in both shots — not, as Soeth maintains,

standing up and swinging the baton at head height (the first shot) or attempting to stand up and swinging the baton again (the second shot).

## c. The Video

The video taken by Sergeant Ellebrecht's dashboard camera is also inconsistent with Officer Soeth's version of the events. Plaintiffs had the video "enhanced" in an attempt to improve the lighting and image quality. The district court had before it both an "enhanced" and "unenhanced" version of the video. We rely for our analysis on the unenhanced version.

The quality of the video is poor, as the recording was made a little after 6:00 a.m., while it was dark and raining. The dashboard camera was supposed to record sound, but for reasons that are unexplained, none has been preserved. The following can nonetheless be discerned. After Newmaker has bitten through the Taser wires, Officer Soeth and Sergeant Ellebrecht struggle with him on the sidewalk. The video shows Soeth hitting Newmaker about five times with his baton while still on the sidewalk. (During his deposition, Soeth stated that he hit Newmaker two times.) Ellebrecht succeeds in handcuffing Newmaker's right wrist. Soeth and Ellebrecht drag Newmaker off the sidewalk onto the street behind a parked car. Ellebrecht's patrol car is in front of the parked car, and what happens on the ground behind the parked car cannot be seen in the video. Soeth goes to the fence, on the left-hand side of the video screen, to retrieve his baton. He returns with the baton to the rear of the parked car and disappears from sight. Soeth's head appears briefly, rising high enough behind the parked car that it can be seen. Ellebrecht stands, and then Newmaker comes into view. He

rises behind the car, and almost immediately twists and falls toward the right, onto the street. There is nothing clearly visible in his hands. After he has fallen, only his legs are visible on the video. The rest of his body is off the screen to the right. At 06:17:44 on the videotape clock, just after Newmaker has fallen to the street, Soeth appears to shoot.

d. Internal Inconsistencies in the Defendants' Statements

Officer Soeth's and Sergeant Ellebrecht's statements are inconsistent with one another on several points. They disagreed over the number of times Newmaker swung the baton. Soeth stated that Newmaker "aggressively" and "violently" swung the baton multiple times, while Ellebrecht stated that Newmaker swung the baton only once. They also offered conflicting testimony about what happened to the baton after Newmaker was shot. Soeth stated that Newmaker fell to the ground with a baton in his hand and that Ellebrecht later kicked the baton away from Newmaker. Ellebrecht originally did not remember Newmaker having the baton in his hand after being shot. He later remembered Newmaker with the baton, but denied kicking the baton away. A photograph taken after the shooting shows the baton lying several feet away from where Newmaker fell.

B. Summary Judgment Is Inappropriate

The district court granted summary judgment because of qualified immunity. Qualified immunity analysis entails a two-pronged inquiry. *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014). First, we "ask[] whether the facts, 'taken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a federal right.'" *Id.* (alterations omitted) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

Second, we "ask[] whether the right in question was 'clearly established' at the time of the violation." *Id.* at 1866 (citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).

Plaintiffs maintain that Officer Soeth violated Newmaker's clearly established Fourth Amendment rights by using excessive, and ultimately deadly, force. Excessive force claims are analyzed under a Fourth Amendment reasonableness inquiry. *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). In conducting this analysis, a court must balance the severity of the intrusion on the individual's Fourth Amendment rights against the government's need to use force. *Graham*, 490 U.S. at 396; *Espinosa v. City & Cty. of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010). Relevant factors include "(1) the severity of the crime; (2) whether the suspect posed an immediate threat to the officers' or public's safety; and (3) whether the suspect was resisting arrest or attempting to escape." *Espinosa*, 598 F.3d at 537. The second factor — whether the suspect posed an immediate threat — is the most important. *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011). Deadly force is not permitted "[w]here the suspect poses no immediate threat to the officer and no threat to others." *Garner*, 471 U.S. at 11; *see also Espinosa*, 598 F.3d at 538.

We hold that the district court erred in granting qualified immunity to Officer Soeth. Summary judgment is not appropriate in § 1983 deadly force cases that turn on the officer's credibility that is genuinely in doubt. *Gonzalez v. City of Anaheim*, 747 F.3d 789, 791 (9th Cir. 2014); *see also C.V. v. City of Anaheim*, 823 F.3d 1252, 1256 (9th Cir. 2016); *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994); *Wilson v. City of Des Moines*, 293 F.3d 447, 454 (8th Cir. 2002).

Qualified immunity should not be granted when other evidence in the record, "such as medical reports, contemporaneous statements by the officer[,] the available physical evidence, [and] any expert testimony proffered by the plaintiff" is inconsistent with material evidence proffered by the defendant. *Scott*, 39 F.3d at 915; *see Gonzalez*, 747 F.3d at 791.

The version of events offered by Officer Soeth and Sergeant Ellebrecht to the district court is materially contradicted by evidence in the record. Their versions of events changed over time. The version they presented to the district court was suggested to them by Investigator Hislop. Both their original version of events (that Officer Soeth shot Newmaker twice in quick succession while he was standing up and swinging the baton at Ellebrecht) and their second version of events (that Officer Soeth first shot while Newmaker was standing and swinging the baton, and quickly shot again as Newmaker attempted to stand back up while swinging the baton) conflict with the autopsy report and with the video evidence. A reasonable jury could conclude that Soeth and Ellebrecht were wrong when they claimed that Newmaker grabbed the baton. In the alternative, a reasonable jury could conclude, given the trajectory of the bullets through Newmaker's body, that even if Newmaker had grabbed the baton Officer Soeth could not have fired his first shot while Newmaker was standing up and swinging the baton. *See Curnow v. Ridgecrest Police*, 952 F.2d 321, 322, 325 (9th Cir. 1991) (holding that officers were not entitled to qualified immunity for shooting a suspect who was holding a semiautomatic rifle when the suspect's back was to the officers and the suspect was not pointing the rifle at them); *Ting v. United States*, 927 F.2d 1504, 1508, 1511 (9th Cir. 1991) (holding officers were not entitled to qualified

immunity because, although the suspect was originally armed with a gun, the plaintiff's version of events suggested that the officers shot "an unarmed and injured felon lying or kneeling on the floor surrounded by five heavily armed agents"). Because this case "requires a jury to sift through disputed factual contentions" — including whether the officers were telling the truth about when, why, and how Soeth shot Newmaker — summary judgment was inappropriate. *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002).

## Conclusion

Based on the foregoing, we reverse the decision of the district court and remand for further proceedings.

**REVERSED and REMANDED.**