**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOHNATHAN JONES, also known as John Leroy Jones; ROSIE LEE MATHEWS; ESTATE OF ANTHONY JONES, *Plaintiffs-Appellants*, v. LAS VEGAS METROPOLITAN POLICE DEPARTMENT; MARK HATTEN; TIMOTHY ENGLISH; RICHARD FONBUENA; STEVEN SKENANDORE, *Defendants-Appellees*. | No. 14-17388 D.C. No. 2:12-cv-01636-APG-CWH OPINION |

Appeal from the United States District Court
for the District of Nevada
Andrew P. Gordon, District Judge, Presiding

Argued and Submitted December 15, 2016
San Francisco, California

Filed October 20, 2017

Before: Alex Kozinski, Jay S. Bybee
and N. Randy Smith, Circuit Judges.

Opinion by Judge Kozinski;
Partial Concurrence and Partial Dissent by
Judge N.R. Smith

## SUMMARY[*]

### Civil Rights

The panel affirmed in part and reversed in part the district court's summary judgment in favor of Las Vegas police officers, and remanded in an action brought pursuant to 42 U.S.C. § 1983 and state law by the parents and estate of Johnathan Jones, who died after being restrained and tased repeatedly and simultaneously for an extended period.

The district court determined that plaintiffs failed to assert their Fourth Amendment claims as executor or administrator of Jones's estate, as required by the Nevada survival statute, and thus plaintiffs lacked standing to bring these claims. The panel held that consistent with the text of Fed. R. Civ. P. 17 and this Circuit's case law interpreting the rule, the district court abused its discretion by failing to give plaintiffs a reasonable opportunity to substitute the proper party and thus cure the defective complaint.

The panel held there was a triable issue of fact as to whether the officers were reasonable in the degree of force they deployed. The panel held that evidence presented at summary judgment would support a jury finding that the officers' repeated and simultaneous use of tasers for over ninety seconds was unreasonable and that a jury could reasonably conclude that the officers knew or should have known that these actions created a substantial risk of serious injury or death.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that any reasonable officer would have known that continuous, repeated, and simultaneous tasings could only be justified by an immediate or significant risk of serious injury or death to officers or the public. The panel held that such force generally cannot be used on a prone suspect who exhibits no resistance, carries no weapon, is surrounded by sufficient officers to restrain him and is not suspected of a violent crime. The panel concluded that given that there was clearly established Fourth Amendment law and a jury could reasonably conclude that the officers used excessive force, the question of qualified immunity must proceed to trial.

The panel affirmed the district court's dismissal of the Fourteenth Amendment claim. The panel held that even assuming all the facts plaintiffs alleged, there was no evidence that the officers acted with a purpose of harming Jones that was unconnected to a legitimate law enforcement objective.

The panel held there was a triable issue of fact as to the state law battery and negligence claims. The panel held that while there was no evidence that any of the officers acted out of hostility or improper motive, there was a factual dispute as to whether the repeated and simultaneous tasings were so excessive under the circumstances that they amounted to willful or deliberate disregard of Jones's rights. The panel therefore remanded plaintiffs' battery and negligence claims.

The panel held that the false arrest/imprisonment claim failed because there was no evidence that the decision to arrest Jones lacked justification, let alone that it was made in bad faith. The panel therefore affirmed the dismissal of that claim.

Concurring in part and dissenting in part, Judge N.R. Smith would affirm the district court's decision to dismiss the Fourth Amendment claims pursuant to Rule 17. Judge N.R. Smith could not conclude that the district court abused its discretion in dismissing plaintiffs' Fourth Amendment claims because the plaintiffs failed to name the proper party in interest. He agreed that absent this unreasonable mistake in failing to name the proper party, this case should proceed to trial.

## COUNSEL

Dale K. Galipo (argued) and Eric Valenzuela, Law Offices of Dale K. Galipo, Woodland Hills, California, for Plaintiffs-Appellants.

Craig R. Anderson (argued) and Micah S. Echols, Marquis Aurbach Coffing, Las Vegas, Nevada, for Defendants-Appellees.

## OPINION

KOZINSKI, Circuit Judge:

We consider whether police officers are entitled to qualified immunity when they're alleged to have caused the death of a suspect by using tasers repeatedly and simultaneously for an extended period.

## BACKGROUND[1]

In the early morning of December 11, 2010, Officer Mark Hatten of the Las Vegas Metropolitan Police Department pulled over Anthony Jones for a routine traffic stop. Hatten ordered Jones out of the car so he could pat him down for weapons. Jones obeyed at first but then started to turn toward Hatten. Scared of the much larger Jones, Hatten drew his firearm, pointed it at Jones and ordered him to turn back around. Instead, Jones sprinted away.

Hatten called for backup and pursued Jones. Hatten didn't believe deadly force was necessary because Jones hadn't threatened him and didn't appear to have a weapon.

---

[1] At summary judgment, we "view the evidence in the light most favorable" to the nonmoving party and draw all reasonable inferences in that party's favor. *Newmaker* v. *City of Fortuna*, 842 F.3d 1108, 1111 (9th Cir. 2016). "[Excessive] force cases pose a particularly difficult problem" under this standard when the defendant officers are the only surviving witnesses. *Scott* v. *Henrich*, 39 F.3d 912, 915 (9th Cir. 1994). To ensure that the officers don't "tak[e] advantage of the fact that the witness most likely to contradict [their] story . . . is unable to testify," we "may not simply accept what may be a self-serving account by the police officer;" we must verify that account with circumstantial and objective evidence in the record. *Id.*

As he waited for other officers to arrive, Hatten used his taser to subdue Jones. Hatten fired his taser twice, causing Jones's body to "lock up" and fall to the ground face down with his hands underneath him. Hatten proceeded to kneel on Jones's back in an attempt to handcuff Jones, keeping his taser pressed to Jones's thigh and repeatedly pulling the trigger.

Hatten continued to tase Jones even after backup arrived. Backup consisted of four officers: Richard Fonbuena on Hatten's right side, who helped handcuff Jones Steven Skenandore, who controlled Jones's legs and feet Timothy English at Jones's head, who applied a taser to Jones's upper back and Michael Johnson, who arrived last and ordered the tasing to stop. Johnson wanted his officers to "back off on the tasers so that [Jones's] muscles would relax." According to Johnson, Jones "didn't look like he was physically resisting" and there were "enough officers" to take Jones into custody. In all, Jones was subjected to taser shocks for over ninety seconds: Hatten tased Jones essentially nonstop that whole time—with some applications lasting as long as nineteen seconds—and, for ten of those seconds, English simultaneously applied his taser.

Once the officers stopped tasing Jones, his body went limp. They sat him up but Jones was nonresponsive and twitching; his eyes were glazed over and rolled back into his head. The officers tried and failed to resuscitate him. Jones was pronounced dead shortly thereafter. The coroner's report concluded that "police restraining procedures"—including the tasings—contributed to Jones's death.

Jones's parents sued the Las Vegas Metropolitan Police Department and all of the officers involved in restraining Jones. They alleged Fourth and Fourteenth Amendment

violations as well as various state law torts. The district court granted summary judgment for the defendants on all claims. Because plaintiffs make no arguments regarding the district court's dismissal of the *Monell* claim against the police department, we deem that claim waived. *See Hayes* v. *Idaho Corr. Ctr.*, 849 F.3d 1204, 1213 (9th Cir. 2017). Plaintiffs also voluntarily dismissed their claims against Officers Fonbuena and Skenandore, so we consider only the claims against Officers Hatten and English.

## ANALYSIS

### A.  Rule 17 Relief

Fourth Amendment claims are "personal" and may not be "vicariously asserted." *Moreland* v. *Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998). Section 1983 actions, however, may be brought by "the survivors of an individual killed as a result of an officer's excessive use of force," provided state law authorizes a survival action. *Id.* (citing 42 U.S.C. § 1988(a)). Nevada authorizes survival actions by the "executor or administrator" of a decedent's estate. Nev. Rev. Stat. § 41.100(3) (1997); *see also Moreland*, 159 F.3d at 369–70. Plaintiffs didn't assert their Fourth Amendment claims as executor or administrator of Jones's estate and thus didn't have standing to bring these claims. The district court denied relief under Rule 17 by refusing to provide plaintiffs an opportunity to substitute the proper party. We review Rule 17 determinations for abuse of discretion. *Esposito* v. *United States*, 368 F.3d 1271, 1273 (10th Cir. 2004).

Courts "may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an

objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3). The purpose of the rule is "to prevent forfeiture of a claim when an honest mistake was made." *Goodman* v. *United States*, 298 F.3d 1048, 1054 (9th Cir. 2002); *see also* 6A Charles Alan Wright et al., *Federal Practice and Procedure* § 1555 (3d ed. 2017) (noting the "judicial tendency to be lenient when an honest mistake has been made in selecting the proper plaintiff"). This is consistent with our longstanding policy in favor of deciding cases on the merits. *See, e.g.*, *Dahl* v. *City of Huntington Beach*, 84 F.3d 363, 366 (9th Cir. 1996); *Russell* v. *Cunningham*, 279 F.2d 797, 804 (9th Cir. 1960).

Defendants argued in their summary judgment motion that neither Jones's father nor the estate had standing to bring Fourth Amendment claims. Plaintiffs responded that the complaint did name parties with standing—the father and the estate, because the father was the administrator of the estate. This was wrong under Nevada law, which called for naming the father as administrator. Plaintiffs thus named the right person but in the wrong capacity. The district court correctly determined that no proper plaintiff had been named for the Fourth Amendment claims.

We have held that Rule 17 relief is available where counsel makes an "understandable" error in naming the real party in interest. *Goodman*, 298 F.3d at 1053–54. Plaintiffs claim they made an "honest and understandable mistake" by naming Jones's estate and father as plaintiffs (rather than naming the father as administrator of Jones's estate) because the district court had approved a stipulation amending their

complaint to name Jones's estate as a plaintiff.**[2]** While this is hardly the best excuse, it was not unreasonable for plaintiffs to have construed the district court's approval of the stipulation as a determination that they had named the proper party. The district court's summary judgment ruling disabused plaintiffs of this notion. Once this occurred, Rule 17 required the district court to give plaintiffs a reasonable opportunity to cure their error: A court "*may not* dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed." Fed. R. Civ. P. 17(a)(3) (emphasis added). Rather than enter judgment immediately after noting the deficiency, the district court should have given plaintiffs a reasonable opportunity to substitute the right party. *See, e.g.*, *Esposito*, 368 F.3d at 1272 (reversing district court's dismissal because plaintiff's mistake was honest, even if not understandable, so court was required to give plaintiff an opportunity to substitute); *Jaramillo* v. *Burkhart*, 999 F.2d 1241, 1246 (8th Cir. 1993) (reversing district court's dismissal because plaintiff wasn't given a reasonable opportunity to substitute); *Kilbourn* v. *West. Sur. Co.*, 187 F.2d 567, 571–72 (10th Cir. 1951) (reversing summary judgment so that real party in interest could be substituted); *cf. Kuelbs* v. *Hill*, 615 F.3d 1037, 1042–43 (8th Cir. 2010) (holding that district court gave plaintiffs reasonable time to substitute party when it

---

**[2]** Plaintiffs filed an amended complaint representing that Jones's father had "filed the necessary documents . . . to be appointed as the special administrator" of the estate. Although the petition and order appointing Jones's father as special administrator appears to have been signed and dated at that time, the document is stamped with a filing date a few months later. Nevertheless, Jones's father was the administrator by the time the district court entered judgment against plaintiffs. The problem is that he wasn't named as such in the complaint.

ordered them to address the issue and waited six months before dismissing).**³**

The district court noted a "disconnect" between the date plaintiffs claimed their probate order appointing Jones's father as administrator was filed and the actual filing date of that order. *See supra* note 2. But this "disconnect" had little to do with plaintiffs' honest mistake—naming the estate, not the administrator of the estate, as a plaintiff—for which our case law requires relief under Rule 17. *See, e.g.*, *Goodman*, 298 F.3d at 1053–54. Plaintiffs explained that they thought they had named the proper plaintiffs, and they did have the probate order signed—though not filed—at the time of the first amended complaint. They were entitled to a reasonable amount of time to correct their error.

Within five days of the district court's ruling, plaintiffs filed a motion seeking leave to do so. They represented that they had the proper party ready to substitute in the action because Jones's father was the administrator of the estate. Although they relied on Rule 15, the motion was one they were permitted to file under Rule 60(b)(1) and sought relief to which they were entitled under Rule 17. Defendants haven't argued that the citation to the wrong rule prejudiced them in any way. The district court didn't rule on this motion

---

**³**    Defendants argue that plaintiffs received the necessary notice earlier when defendants pointed out the deficiency in their motion for summary judgment. But plaintiffs disputed defendants' interpretation of the proper party, and plaintiffs' interpretation, though ultimately wrong, wasn't frivolous. Plaintiffs were entitled to await the district court's ruling before being deemed to have received notice for purposes of Rule 17. Holding otherwise would pressure plaintiffs to adopt their opponents' interpretation even if they're convinced that they did everything right.

until months after plaintiffs had filed their timely notice of appeal, which deprived the district court of jurisdiction.

Consistent with the text of Rule 17 and our case law interpreting it, we conclude that the district court abused its discretion by failing to give plaintiffs a reasonable opportunity to substitute the proper party and thus cure the defective complaint.

## B.  Qualified Immunity

Defendants argue that we should nonetheless affirm the district court's judgment on qualified immunity grounds. Although the district court didn't reach the issue on the relevant Fourth Amendment claims, both parties briefed it below, so the issue is ripe for our consideration. Because the issue will no doubt arise on remand, we exercise our discretion to review it.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson* v. *Callahan*, 555 U.S. 223, 231 (2009) (citation omitted).  To overcome a claim of immunity, plaintiffs must plead "facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft* v. *al-Kidd*, 563 U.S. 731, 735 (2011). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Id.*, at 741 (alteration in original)

(quoting *Anderson* v. *Creighton*, 483 U.S. 635, 640 (1987)). The Supreme Court doesn't "require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*

**1.** Reasonable Conduct

In evaluating Fourth Amendment claims, we ask whether the officers' conduct was reasonable under the circumstances. *See Scott* v. *Harris*, 550 U.S. 372, 383 (2007). Viewing the facts in the light most favorable to plaintiffs, *see Saucier* v. *Katz*, 533 U.S. 194, 201–02 (2001), we must determine whether the officers' conduct was reasonable using the Supreme Court's *Graham* v. *Connor* factors: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. 386, 396 (1989). The most important factor is whether the suspect posed an immediate threat. *Mattos* v. *Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (en banc) [hereinafter *Mattos II*]. In examining the threat, "a simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern." *Deorle* v. *Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001). "A desire to resolve quickly a potentially dangerous situation is not the type of governmental interest that, standing alone, justifies the use of force that may cause serious injury." *Id.*

Here the officers' use of force began appropriately enough: Despite Jones's large size and the fact that he had run away from a traffic stop, he had neither threatened Hatten nor committed a serious offense, and he didn't appear to have a weapon. Based on these facts, Hatten believed that

something less than deadly force was justified, so he used his taser to subdue Jones. This decision was consistent with our case law, as we've held that use of tasers can be intermediate force. *See Bryan* v. *MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010). Using a taser to stop Jones and place him under arrest was reasonable under the circumstances.

As the situation evolved, however, the justification for the use of force waned. The four other officers at the scene gave somewhat inconsistent accounts about their continued use of force. What is clear is that Hatten continued to apply his taser to Jones and English also applied his taser twice, even as Jones was being handcuffed. By the time Jones was prone and surrounded by multiple officers, there would have been no continuing justification for using intermediate force: Jones was on the ground after his body "locked up" as a result of repeated taser shocks; he had no weapon and was making no threatening sounds or gestures. There is a triable issue of fact as to whether the officers were reasonable in the degree of force they deployed at that point.

Evidence presented at summary judgment would support a jury finding that the officers' repeated and simultaneous use of tasers for over ninety seconds was unreasonable. Taser International provided users with product warnings that the risk of "serious injury or death" from tasers increases with multiple and simultaneous applications. Hatten testified that such use was discouraged, though not forbidden, by the Las Vegas Metropolitan Police Department. Consistent with Taser's product warnings, the officers were instructed that repeated taser applications could contribute to serious injury or death, particularly when the target is subject to certain risk factors, like struggling, being overweight or using drugs or

alcohol. The officers knew that Jones was subject to two of these risk factors: He was overweight and struggled.

Plaintiffs also presented a declaration from a police practices expert who opined that reasonably trained officers would have known that repeated and simultaneous taser use poses a risk of serious injury or death. The expert further explained that "[t]he normal cycle for the X-26 taser is five (5) seconds" but that the taser will continue to discharge electricity "as long as the operator holds the trigger down." Hatten's X-26 taser frequently went past the five-second application cycle—with some shocks lasting eleven seconds, thirteen seconds (twice) and nineteen seconds. This left burn marks on Jones's thigh, forearm and hand.

Based on this evidence, a jury could reasonably conclude that the officers knew or should have known that their use of tasers created a substantial risk of serious injury or death. Thus, there are triable issues of fact as to whether the officers' continuous and simultaneous tasing was reasonable under the circumstances, and whether the officers were on notice that the force they used could cause serious injury or death.[4]

---

[4] We've held that a single taser shot can "intrude[] upon the victim's physiological functions and physical integrity in a way that other non-lethal uses of force do not." *Bryan*, 630 F.3d at 825–26. In light of this, "we agree[d] with the Fourth and Eighth Circuit's characterization of a taser shot [and] . . . therefore conclude[d] that tasers like the X[-]26 constitute an 'intermediate . . . quantum of force.'" *Id.* (citations omitted). Here, Officers Hatten and English went far beyond a single shot: They discharged their tasers multiple times and simultaneously. This may raise the "quantum of force."

**2.** Clearly Established Law

Because defendants may have committed constitutional violations, we turn to the second element of qualified immunity: whether there was clearly established law. Defendants rely on *Brooks* v. *City of Seattle*, 599 F.3d 1018 (9th Cir. 2010), *vacated on reh'g en banc sub nom.*, *Mattos II*, 661 F.3d 433, as clearly established law on tasers at the time of Jones's death. In that case, we held that it wasn't excessive to use three five-second shocks on a pregnant woman who was resisting arrest after a traffic stop. *Id.* at 1030–31. We explained that taser use in that case was "less than . . . intermediate" force because it was "more on par with pain compliance techniques."[5] *Id.* at 1027–28. But, as we explain above, continuous, repeated and simultaneous tasings are different from isolated shocks.[6] Any reasonable officer would have known that such use can only be justified by an

_____

[5] *Brooks* was overturned when it was taken en banc in 2011. We held that a reasonable fact finder could conclude that the use of force was excessive. *Mattos II*, 661 F.3d at 446. We noted the "overwhelmingly salient factor" was that Brooks was tased three times in less than one minute. *Id.* at 445. "Three tasings in such rapid succession provided no time for Brooks to recover from the extreme pain she experienced, gather herself, and reconsider her refusal to comply." *Id.* Three tasings in less than one minute allow for over twenty seconds between shocks. That's materially different from continuous use for ninety seconds.

[6] Defendants also rely on *Marquez* v. *City of Phx.*, 693 F.3d 1167 (9th Cir. 2012), a post-*Mattos II* case involving the repeated use of a single taser. Their reliance is misplaced. There we found that the officers were justified in tasing the decedent with nine five-second applications because the decedent was resisting violently and posed a serious threat to the officers and others. *Id.* at 1174–76. Jones, by contrast, offered no resistance and was lying face down on the ground. *Marquez* also didn't involve simultaneous and prolonged taser applications, as occurred here.

immediate or significant risk of serious injury or death to officers or the public. *See, e.g.*, *Scott*, 39 F.3d at 914 ("An officer's use of *deadly* force is reasonable only if the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.") (internal quotation marks and citation omitted). Such force generally can't be used on a prone suspect who exhibits no resistance, carries no weapon, is surrounded by sufficient officers to restrain him and is not suspected of a violent crime.

Given that there was clearly established Fourth Amendment law and a jury could reasonably conclude that the officers used excessive force, the question of qualified immunity must proceed to trial.[7]

---

[7] Plaintiffs raise a separate Fourth Amendment claim: Hatten lacked reasonable suspicion to stop Jones's vehicle in the first place. Officers are required to have at least reasonable suspicion to stop a vehicle for investigatory purposes. *Delaware* v. *Prouse*, 440 U.S. 648, 663 (1979); *United States* v. *Lopez-Soto*, 205 F.3d 1101, 1104 (9th Cir. 2000). Hatten claimed that he pulled Jones over for driving without his headlights on and failing to stop at a red light. But Hatten's account of the stop changed between his initial "use of force" interview with the police department and his deposition. At first, Hatten justified the stop based only on Jones's headlights and said that Jones had stopped at the light. Surveillance video of the traffic stop, however, showed that Jones's headlights were on when Hatten stopped him. In his deposition, Hatten then claimed that Jones turned his lights on once Hatten started following him, and that he pulled Jones over after he observed Jones perform what he called "a California rolling stop" at a red light before making a right turn. These changes in Hatten's account undermine his credibility and preclude us from accepting his testimony at face value. *See supra* note 1. There's thus a triable issue of fact as to whether the stop was supported by reasonable suspicion. Fourth Amendment jurisprudence on traffic stops is well-established, so

## C. Fourteenth Amendment Claim

The district court granted summary judgment on plaintiffs' Fourteenth Amendment claim both on the merits and because it found that parents of an adult child lack a cognizable constitutional claim as to police mistreatment of that child.   But our case law does recognize such a constitutional claim. *See, e.g.*, *Johnson* v. *Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1169 (9th Cir. 2013) ("[W]e have recognized a parent's right to a child's companionship without regard to the child's age.") (collecting cases).

Because parents have a constitutionally protected interest in the companionship of their children, *id.* at 1168–69, "[o]fficial conduct that 'shocks the conscience' in depriving parents of that interest is cognizable as a violation of due process." *Wilkinson* v. *Torres*, 610 F.3d 546, 554 (9th Cir. 2010) (citation omitted).   In cases like this, where officers must react quickly to a rapidly changing situation, the test is whether the officers acted with a purpose of causing harm unconnected to any legitimate law enforcement objective. *See Porter* v. *Osborn*, 546 F.3d 1131, 1137, 1140 (9th Cir. 2008).

Even assuming all the facts plaintiffs allege, there's no evidence that the officers acted with a purpose of harming Jones that was unconnected to a legitimate law enforcement objective.   Therefore, we affirm the district court's dismissal of the Fourteenth Amendment claim.

---

Hatten isn't entitled to qualified immunity on that claim.  We make no judgment as to whether plaintiffs are entitled to assert this claim through their survivorship action, or if there are any damages available.

**D.  State Law Claims**

Plaintiffs also present state law claims for false arrest/imprisonment, battery and negligence.  The district court held that Nevada's discretionary immunity statute shielded the officers from liability.  The statute precludes claims against state officers based on acts or omissions relating to a "discretionary function," even if that discretion is abused.  Nev. Rev. Stat. § 41.032(2) (1987).  But decisions made in bad faith, such as "abusive" conduct resulting from "hostility" or "willful or deliberate disregard" for a citizen's rights, aren't protected under the immunity statute even if they arise out of a discretionary function.  *Davis* v. *City of Las Vegas*, 478 F.3d 1048, 1060 (9th Cir. 2007).

Because clearly established law isn't an element in the state immunity analysis, we look only to whether a reasonable jury could find that the officers' use of force indicated hostility or willful disregard of Jones's rights.  Considering all of the facts alleged in the light most favorable to plaintiffs, we find that there's a triable issue of fact with regards to the battery and negligence claims.  *See Mattos II*, 661 F.3d at 448 n.8 (denying state immunity for assault and battery claims because a jury could find that the use of force was excessive and violated state law, even though the federal claims were barred by qualified immunity).  While there's no evidence that any of the officers acted out of hostility or improper motive, there's a factual dispute as to whether the repeated and simultaneous tasings were so excessive under the circumstances that they amounted to willful or deliberate disregard of Jones's rights.  We therefore remand plaintiffs' battery and negligence claims.

The false arrest/imprisonment claim, however, fails, even viewing the facts in the light most favorable to plaintiffs. In Nevada, false arrest/imprisonment requires the arrestor to restrain another's "liberty under the probable imminence of force without any legal cause or justification." *Hernandez* v. *City of Reno*, 634 P.2d 668, 671 (Nev. 1981) (citation and quotation marks omitted). Officer Hatten restrained Jones with sufficient legal justification: Jones fled from Hatten during a routine traffic stop. There's no evidence that Hatten's subsequent decision to arrest Jones lacked justification—let alone that it was made in bad faith. We affirm the dismissal of the false arrest/imprisonment claim.

**AFFIRMED IN PART, REVERSED IN PART. No costs.**

N.R. SMITH, Circuit Judge, concurring in part and dissenting in part:

I cannot conclude, as the majority does, that the district court abused its discretion in dismissing Plaintiffs' Fourth Amendment claims because the Plaintiffs failed to name the proper party in interest.[1] "A district court abuses its discretion when it makes an error of law, when it rests its decision on clearly erroneous findings of fact, or when we are left with a definite and firm conviction that the district court committed a clear error of judgment." *United States v. 4.85 Acres of Land, More or Less, Situated in Lincoln Cty., Mont.*, 546 F.3d 613, 617 (9th Cir. 2008) (internal quotation marks

[1] I concur with all aspects of the majority opinion except for the Rule 17 analysis.

and citation omitted). None of these errors occurred in the district court's Rule 17 analysis. Further, we cannot reverse the district court under the abuse of discretion standard unless "the district court reache[d] a result that is illogical, implausible, or without support in the inference that may be drawn from the record." *Kode v. Carlson*, 596 F.3d 608, 612 (9th Cir. 2010).

The district court dismissed the first and second claims for relief (the Fourth Amendment claims) for lack of standing based on Federal Rule of Civil Procedure 17. Rule 17(a)(1) provides that an action cannot be prosecuted unless it is asserted by the real party in interest. Thus, under Rule 17, a claim must be dismissed if it is not brought by the real party in interest. *See Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 20 (2d Cir. 1997). The parties agree that the named Plaintiffs (Johnathan Jones, Rosie Lee Mathews, and the Estate of Anthony Jones) are not the proper parties to assert the Fourth Amendment claims. Thus, we start with the assumption that these claims must be dismissed. The named parties do not have standing to bring them.

Rule 17(a)(3) does provide a limited exception to this general rule. Rule 17(a)(3) provides that, (1) "when determination of the right party to sue is difficult," or (2) when an understandable mistake [in naming the real party in interest] has been made," *see U.S. for Use & Benefit of Wulff v. CMA, Inc.*, 890 F.2d 1070, 1074 (9th Cir. 1989) (citing Note of Advisory Committee on 1966 Amendment to Fed. R. Civ. P. 17), courts "may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action," Fed. R. Civ. P. 17(a)(3).

Because the district court did not commit legal error or reach an illogical or implausible decision in determining that the Rule 17(a)(3) exception does not apply in this case, we must affirm the district court (given our standard of review). Further, even assuming the Rule 17(a)(3) exception does apply, we must still affirm, because the district court satisfied the requirements of Rule 17(a)(3) before dismissing the Fourth Amendment claims. Finally, the Plaintiffs have never made the argument that the majority now articulates for them.

## A.

The district court did not abuse its discretion in determining that the Rule 17(a)(3) exception does not apply to this case. The majority does not contend that "determination of the right party to sue" was difficult; indeed, that contention would have been difficult (if not impossible) to make. Nevada law plainly states who can bring a survival action. *See* Nev. Rev. Stat. § 41.100(3). The majority instead concludes that the district court abused its discretion in concluding that Plaintiffs' mistake was not "understandable."[2] According to the majority, it was understandable that Plaintiffs believed that they had named the proper party (in the proper capacity), because the district court had approved a stipulation that would amend their complaint to name Decedent's estate as a plaintiff. The district court did not refuse this reasoning illogically, implausibly, or without support for several reasons.

---

[2] Although not explicitly stated, the majority also appears to expand Rule 17's application to every "honest mistake," even if that mistake was the product of willful blindness to the law's requirements or lack of due diligence. Such an expansion is improper, because it is unsupported by our case law.

First, the district court correctly reasoned that the law was so clear that the mistake was not understandable. The Nevada law does not allow an estate to bring a survival action. Yet Plaintiffs insisted in their briefs to the district court—without ever citing any legal authority—that "the Estate of Anthony Jones is a party that can assert its own claims for relief." This insistence, without support, that no defect existed, was plainly wrong. Even the majority agrees.

Second, although the district court approved a stipulation allowing Plaintiffs to amend the complaint to add the Estate of Anthony Jones as a plaintiff, the district court never stated or determined that the Estate of Anthony Jones was the proper party to bring the Fourth Amendment claims. In fact, the stipulation did not mention the Fourth Amendment claims and, when the stipulation was proposed and signed, any issues over the proper party in interest had never been raised. Thus, it was not reasonable for Plaintiffs to interpret the approved stipulation as an endorsement of the propriety of their Amended Complaint.

Third, the district court found the reasons given for Plaintiffs' mistake to be disingenuous. Plaintiffs asserted in their original and Amended Complaint that Johnathan Jones had "filed the necessary documents with the Clark County Probate Court to be appointed as the special administrator of THE ESTATE OF ANTHONY JONES." However, after the motion for summary judgment was filed, it was clear that Johnathan Jones had not in fact filed the necessary documents to complete this process. Nevertheless, in Plaintiffs briefs to the district court, they continually insisted that their original assertion was accurate. Also important, Plaintiffs never explained to the district court why they had to add the Estate of Anthony Jones as a plaintiff if Johnathan Jones had filed

all the necessary documents to have legal standing to bring the Fourth Amendment claims.

In sum, it was not an abuse of discretion for the district court to conclude that Plaintiffs' mistake was not understandable when it was based on an unfounded interpretation of the law and an inaccurate account of the facts.

**B.**

Even assuming that Plaintiffs had made an "understandable mistake," the district court did not abuse its discretion in dismissing the Fourth Amendment claims. The district court gave Plaintiffs ample time to substitute the real party in interest, as Rule 17(a)(3) requires. Rule 17 requires district courts to give plaintiffs "a reasonable time" to substitute the real party "after an objection" has been made. Defendants first objected that the real party in interest had not been named in their motion for summary judgment, filed on November 8, 2013. And yet, Plaintiffs did not seek to amend their complaint to name Johnathan Jones in his capacity as special administrator of Decedent's estate until November 11, 2014—after the district court granted Defendants' motion for summary judgment on November 6, 2014. Thus, Plaintiffs had a year to substitute the real party in interest after an objection was made. The plain language of Rule 17 does not require district courts to give plaintiffs "a reasonable time" to substitute the real party in interest after the court has notified them that the real party in interest has not been named (as the majority suggests). Thus, the district court did not commit legal error (and did not abuse its discretion) in dismissing the Fourth Amendment claims after giving Plaintiffs a year after the objection was made to substitute the real party in interest.

Moreover, Plaintiffs' actions show they were on notice that they had not named the proper party. Just ten days after Defendants objected (on November 18, 2013), Plaintiffs filed (in Nevada state court) the ex parte order naming Johnathan Jones as special administrator of decedent's estate, which had been signed (but not filed) seven months earlier—on April 9, 2013. This filing finally gave legal effect to the order. *See Rust v. Clark Cty. Sch. Dist.*, 747 P.2d 1380, 1382 (Nev. 1987). Thus, on November 18, 2013, Johnathan Jones gained the proper legal status to bring the Fourth Amendment claims. However, Plaintiffs never sought to amend the complaint to name the real party in interest until November 11, 2014, even though (1) Johnathan Jones gained the proper legal status a year earlier, and (2) Plaintiffs had previously acknowledged in their brief to the district court that Nevada Revised Statute section 41.100(3) extends the right to bring a survival action to the official representatives of an individual's estate. Thus, Plaintiffs were given more than a reasonable amount of time to substitute the real party in interest after they became aware that Johnathan Jones did not have the proper status to assert the Fourth Amendment claims. Accordingly, the district court did not commit an error of law (and did not otherwise abuse its discretion) in concluding that Rule 17(a)(3) did not prevent the district court from dismissing the Fourth Amendment claims.

## C.

Finally, the district court cannot have abused its discretion in failing to grant relief that was never requested. Plaintiffs have never argued to the district court that Rule 17(a)(3) required the district court to allow them to name Johnathan Jones, as administrator of Anthony Jones's estate, as a party. Even after the district court granted Defendants' motion for

summary judgment, Plaintiffs still did not ever assert a Rule 17 defense; instead, they filed a Rule 15 motion and asserted that "justice requires leave to amend." Thus, Plaintiffs have never even attempted to articulate to the district court why their mistake in not naming the proper party in interest was "understandable."

I agree that it is best to decide cases on the merits and I agree that, absent this unreasonable mistake in failing to name the proper party, this case should proceed to trial. However, the majority here ignores the standard of review in reversing the district court's Rule 17 decision. Instead, it reverses the district court on an argument never made by anyone but it.

For all of these reasons, I would affirm the district court's decision to dismiss the Fourth Amendment claims pursuant to Rule 17.