**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JUN 14 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| THE ESTATE OF CECIL ELKINS, JR.; CREASHA ELKINS, individually, as successor in interest to Cecil Elkins, Jr. guardian ad litem Valiecia Perez guardian ad litem Dylan Elkins; DEVIN ELKINS, individually and as successors in interest to Cecil Elkins, Jr.; CECIL ELKINS; TINA TERREL; VALIECIA PEREZ; DYLAN ELKINS, <br><br> Plaintiffs-Appellants, <br><br> v. <br><br> HIPOLITO PELAYO, <br><br> Defendant-Appellee. | No. 16-16227 <br><br> D.C. No. 1:13-cv-01483-AWI-SAB <br><br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the Eastern District of California
Anthony W. Ishii, Senior District Judge, Presiding

Argued and Submitted December 7, 2017
San Francisco, California

Before: GRABER and N.R. SMITH, Circuit Judges, and SIMON,[**] District Judge.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Michael H. Simon, United States District Judge for the District of Oregon, sitting by designation.

While attempting to evade police custody, Cecil Elkins, Jr. ("Elkins") was shot in the back and killed by Tulare Police Officer Hipolito Pelayo. Elkins's estate and family sued Officer Pelayo, claiming that his use of deadly force violated the Fourth Amendment, the Fourteenth Amendment, and California state law. After concluding that Elkins was reaching for his waistband just before Officer Pelayo opened fire, the district court granted summary judgment in favor of the officer under the doctrine of qualified immunity. Elkins was unarmed at the time he was killed, he had no history of carrying firearms, no one had told the police that Elkins was armed or had a history of using a gun, no officer at the scene saw Elkins with a gun, no officer warned Elkins that he would be shot if he failed to stop, and Elkins was running away from the police to avoid apprehension. Because we conclude that a reasonable jury could find it more likely than not that Elkins was *not* reaching for his waistband just before he was shot, we reverse and remand. *See Cruz v. City of Anaheim*, 765 F.3d 1076, 1079-80 (9th Cir. 2014) (holding that issues of fact as to whether suspect, a known gang member whom officers had been told was carrying a gun in his waistband, had reached for his waistband just before being shot precluded summary judgment on claims against four officers and city, notwithstanding testimony from officers that suspect had made such a reach).

We review summary judgment determinations *de novo. Estate of Lopez ex rel. Lopez v. Gelhaus*, 871 F.3d 998, 1005 (9th Cir. 2017). We also review *de novo*

whether a defendant officer is entitled to qualified immunity. *Id*.

A claim of excessive force in violation of the Fourth Amendment

> is governed by an "objective reasonableness standard," which requires a "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 388, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (internal quotation marks omitted). The calculus "must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*. at 396-97, 109 S.Ct. 1865. We therefore judge reasonableness "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. at 396, 109 S.Ct. 1865.

*Estate of Lopez*, 871 F.3d at 1005.

"At summary judgment, we view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Jones v. Las Vegas Metro. Police Dep't*, 873 F.3d 1123, 1127 n.1 (9th Cir. 2017) (internal quotation marks omitted). In addition, as we explained in *Cruz*:

> [I]n the deadly force context, we cannot "simply accept what may be a self-serving account by the police officer." *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994). Because the person most likely to rebut the officers' version of events—the one killed—can't testify, "[t]he judge must carefully examine all the evidence in the record . . . to determine whether the officer's story is internally consistent and consistent with other known facts." *Id*.; *see also Gonzalez v. City of Anaheim*, 747 F.3d 789, 794-95 (9th Cir. 2014) (en banc). This includes

"circumstantial evidence that, if believed, would tend to discredit the police officer's story." *Scott*, 39 F.3d at 915.

*Cruz*, 765 F.3d at 1079.

Before the district court, Officer Pelayo argued that Detective Guzman, Sergeant Ynclan, and Officer Pelayo all saw Elkins reach into his waistband. Plaintiffs' counsel challenged that description. Detective Guzman testified that from where he was standing when Elkins landed, he "couldn't see [Elkins's] hands" but did see Elkins reach toward his "lower abdomen area." Detective Guzman speculated that "it could have been his waistband." Sergeant Ynclan testified that he was parking his patrol vehicle, so he "didn't see everything in sequence" when Elkins landed on the other side of the fence. After further questions by Plaintiffs' counsel, Plaintiffs' counsel requested a break. After the break, Plaintiffs' counsel asked Sergeant Ynclan if he saw Elkins reach for his waistband, and Sergeant Ynclan answered, "I believe so I did. I did." The testimony from both Detective Guzman and Sergeant Ynclan, while strong, is not unequivocal. A jury should be allowed to determine how much weight to give this evidence.

Regarding Officer Pelayo, he testified that he fired his gun immediately upon seeing Elkins reach for his waistband because the officer feared for his life. But, viewing the evidence in the light most favorable to Plaintiffs, we think that Officer Pelayo's "story is [not] . . . consistent with other known facts," *Scott*, 39

F.3d at 915, including the facts that Elkins was running away and that Officer Pelayo had no reason to think that Elkins was armed.

Plaintiffs also presented evidence calling into question Officer Pelayo's credibility. During his deposition, Officer Pelayo testified that the first time he had ever heard of Elkins was during the briefing held on November 13, 2012, the day of the shooting. Officer Pelayo stated that Sergeant Ynclan led the briefing. Officer Pelayo also testified that Sergeant Ynclan explained that the information "they were given was that [Elkins] was armed with a gun." Sergeant Ynclan, however, testified during *his* deposition that, at the time of the briefing, there was *no* information given to the officers that Elkins was carrying a firearm and that no one had told Sergeant Ynclan that Elkins was carrying a firearm. Moreover, in his written submissions to the district court as part of the summary judgment proceeding, Officer Pelayo agreed that it was "[u]ndisputed" that "[n]o one told Officer Pelayo that Elkins was possibly armed with a gun on November 13, 2012." Thus, Officer Pelayo's false deposition testimony about what Sergeant Ynclan said during the briefing on the day of the shooting is sufficient to permit a reasonable jury to disregard the entirety of Officer Pelayo's testimony. *See* Ninth Cir. Crim. Jury Instr. 3.9 (2017) ("[I]f you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said.").

5

In addition, Plaintiffs present evidence of a separate incident in 2010 involving Officer Pelayo. During that incident, Officer Pelayo was assisting another officer chasing a suspect at night through a muddy field. When Officer Pelayo arrived, the suspect was already in handcuffs and sitting on the ground. Officer Pelayo ran up and punched the suspect in the face. Officer Pelayo later explained that he was trying to apprehend the suspect and did not know that the suspect was handcuffed. Another officer on the scene, however, stated that Officer Pelayo said to the suspect, "That's what you get for making me run, bitch." The other officer added that Officer Pelayo also told the suspect as they were leaving the muddy field, "You're lucky I didn't shoot your ass." Officer Pelayo denied making that statement and asserted that what he actually said was, "Why the fuck did you make me run?" Whether the evidence of Officer Pelayo's actions and statements during the 2010 separate incident would be admissible under Rule 404(b)(2) of the Federal Rules of Evidence as evidence of motive, intent, or lack of accident, or whether this evidence should be excluded under Rule 403, are questions that we need not resolve at this time.

Plaintiffs argue that this evidence, including the inconsistencies between Officer Pelayo's testimony and Sergeant Ynclan's testimony, undermine Officer Pelayo's credibility and should be considered by a jury. We agree. *See Jones*, 873 F.3d at 1132 n.7 ("The[] changes in [the officer's] account undermine

6

his credibility and preclude us from accepting his testimony at face value" for purposes of summary judgment.).

In *Cruz*, we stated: "To decide this case a jury would have to answer just one simple question: Did the police see Cruz reach for his waistband? If they did, they were entitled to shoot; if they didn't, they weren't." *Cruz*, 765 F.3d at 1079. Here, because the record contains reasons to doubt whether Officer Pelayo actually saw Elkins reach for his waistband, the decision similarly should be left to the jury.

In summary, regarding Plaintiffs' Fourth Amendment claim, a reasonable jury could find on the evidence presented that Elkins was not reaching for his waistband or that, even if he was, the use of deadly force in this case was excessive. Regarding Plaintiffs' Fourteenth Amendment claim, a reasonable jury could find, under the facts presented, that shooting a suspect simply to stop him from running away was not a legitimate law enforcement objective. *Jones*, 873 F.3d at 1133. Plaintiffs' state law claims are analyzed under the same standard of objective reasonableness used in Fourth Amendment claims. *Martinez v. County of Los Angeles*, 54 Cal. Rptr. 2d 772, 780 (Ct. App. 1996). A reasonable jury, however, also could reach a different conclusion and find in favor of Officer Pelayo. Excessive force cases involving officer shootings, especially when an unarmed suspect has been fatally shot in the back by police, are often fact-specific and generally inappropriate for resolution by summary judgment. This case does

7

not present an exception to this general rule.

**REVERSED AND REMANDED.**

N.R. SMITH, Circuit Judge, dissenting:

*Elkins v. Pelayo*, No. 16-16227

N.R. SMITH, Circuit Judge, dissenting:

In making its decision, the majority ignores the Supreme Court's constant admonition to determine issues of qualified immunity at the earliest stage of litigation by failing to apply the summary judgment rules related to the doctrine of qualified immunity. Let me explain.

I

"The Supreme Court has repeatedly stressed the importance of deciding qualified immunity 'at the earliest possible stage in litigation' in order to preserve the doctrine's status as a true '*immunity from suit* rather than a mere defense to liability.'" *Morales v. Fry*, 873 F.3d 817, 822 (9th Cir. 2017) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam). When an officer moves for summary judgment based on qualified immunity, "summary judgment is improper if, resolving all disputes of fact and credibility in favor of the party asserting the injury, (1) the facts adduced show that the officer's conduct violated a constitutional right, and (2) that right was 'clearly established' at the time of the violation." *Kirkpatrick v. Cty. of Washoe*, 843 F.3d 784, 788 (9th Cir. 2016) (en banc) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001). In other words, the court must determine whether there is sufficient evidence in the record for a jury to find the facts alleged by the plaintiff by a preponderance of the evidence. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Cruz v. City of Anaheim*, 765 F.3d 1076, 1079 (9th Cir. 2014). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."*Anderson*, 477 U.S. at 252.

II

In this case, viewing the evidence in the record in the light most favorable to Plaintiffs, these are the uncontroverted facts: The day prior to Elkins' shooting, law enforcement officers attempted to apprehend him, because he was wanted in connection with a car burglary. To escape capture, Elkins rammed his vehicle into an occupied patrol car and then drove his vehicle at Officer Chris Marvin who was on foot. Officer Marvin jumped out of the path of Elkins' vehicle and fired his service weapon, striking Elkins twice in the arm. Because of Elkins' violent conduct[1], the officers decided to wait until daylight the next day to apprehend Elkins.

Thus the next day, officers attempted to arrest Elkins. However, Elkins again attempted to evade capture. Elkins initially fled in a car, but, as his car came to a stop at a gas station, Elkins jumped out and began to run on foot. Elkins first ran

---

[1] Unlike in *Cruz*, Elkins had actually displayed a willingness to use deadly force against officers to escape capture when he rammed an occupied patrol car and drove at Officer Marvin. *See Cruz*, 765 F.3d at 1078.

into a tire shop; Agent Navarro followed, identifying himself as a law enforcement officer and yelling at Elkins to stop. Instead of stopping, Elkins continued running, throwing tires and tools at Agent Navarro. Officer Pelayo also gave chase on foot, circling around the outside of the tire shop in order to cut Elkins off as he exited from it. As Elkins exited the tire shop, Officer Pelayo ordered him to stop. Elkins did not. Instead, Elkins continued to run, jumping over a stack of tires and crawling over an eight foot high fence. As Elkins landed on the other side of the fence, Officer Pelayo yelled "Let me see your hands. Stop. Stop. Let me see your hands." Detective Guzman similarly ordered Elkins to show his hands.

As Elkins began to run again, Deputy Pelayo, Detective Guzman, and Sergeant Ynclan saw Elkins reach toward his waistband.[2] Believing Elkins was reaching for a firearm, Officer Pelayo discharged his service weapon a number of times in quick succession striking Elkins. As Commander Michael Haroldsen approached Elkins, Officer Pelayo was yelling "Why were you reaching? Do you

---

[2] Even on cross-examination, Detective Guzman testified that Elkins' reached toward his lower abdomen area and Sergeant Ynclan testified that he believed Elkins reached into his waistband. Thus, both Detective Guzman and Sergeant Ynclan testified that they saw Elkins reached toward his waistband. Even the majority admits the testimony of Detective Guzman and Sergeant Ynclan is "strong."

have a gun? Do you have a gun? Why were you reaching for your waistband?"[3]

The officers checked Elkins for weapons. They found no weapons but found a

methamphetamine pipe and prescription pill in Elkins' coin pocket.

Based on these facts, Officer Pelayo would easily be entitled to qualified

immunity. However, in the deadly force context "the person most likely to rebut

the officers' version of events—the one killed—can't testify." *Cruz*, 765 F.3d at

1079. Thus, "we cannot 'simply accept what may be a self-serving account by the

police officer.'" *Id.* (quoting *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir.1994)).

> Accordingly, we carefully examine "all the evidence in the record, such
> as medical reports, contemporaneous statements by the officer and the
> available physical evidence, . . . to determine whether the officer's story
> is internally consistent and consistent with other known facts." We must
> also examine "circumstantial evidence that, if believed, would tend to
> discredit the police officer's story."

*Gonzalez v. City of Anaheim*, 747 F.3d 789, 795 (9th Cir. 2014) (en banc) (internal

citation omitted) (quoting *Henrich*, 39 F.3d at 915).

Reviewing all of the evidence in the record, there is simply no evidence

---

[3] Commander Haroldsen did not see the shooting but heard the shots. He arrived almost immediately after the shooting. He handcuffed Elkins, because Officer Pelayo told him he thought Elkins was reaching for his waistband and had a gun. Officer Pelayo then began to administer first aid. Commander Haroldsen further testified that at "a later time when [Officer Pelayo] realized [Elkins] wasn't armed, he was very emotional, very upset." In addition, at a debriefing with a psychologist, "Officer Pelayo was very emotionally upset and just second guessing himself."

contradicting Officer Pelayo's testimony. Instead, the evidence corroborates Officer Pelayo's statements. First, Elkins was carrying a methamphetamine pipe near his waistband. Plaintiffs admit that "[g]iven that Elkins landed from a significant height in a crouching position, it is possible that Elkins reached towards the methamphetamine pipe because it was digging into his abdomen or had caused him pain." In addition, the district court noted that "[s]uspects have been known to discard contraband when fleeing from the police." Second, Plaintiffs note that Elkins was wearing baggy pants and may have reached for his waistband to pull them up. Surveillance video from the gas station supports this theory. In the video, Elkins appears to reach for and grab his waistband while fleeing his vehicle on foot. Third, Officer Pelayo's contemporaneous statements confirm these uncontroverted facts. *See Gonzalez*, 747 F.3d at 795. As the officers approached Elkins after the shooting, Officer Pelayo was yelling "Why were you reaching? Do you have a gun? Do you have a gun? Why were you reaching for your waistband?" Finally, the testimony of Sergeant Ynclan and Detective Guzman is consistent with Officer Pelayo's statement that Elkins reached for his waistband.

In sum, Officer Pelayo was pursuing a suspect, known to use deadly force to escape capture. When Officer Pelayo saw the suspect reach into his waistband, he believed the suspect was attempting to retrieve a weapon. As a result, Officer

5

Pelayo responded with deadly force.

## III

Facing a nearly identical factual situation, we have already determined that the use of deadly force is objectively reasonable. In *Cruz*, officers were pursuing a reportedly armed suspect who displayed "dangerous and erratic behavior." 765 F.3d at 1078. We determined that "[i]t would be unquestionably reasonable for police to shoot [such] a suspect . . . if he reaches for a gun in his waistband, or even if he reaches there for some other reason." *Id.* Thus, it was reasonable for Officer Pelayo to use deadly force when he saw Elkins reach into his waistband even though Elkins was not in fact armed.[4] Consequently, his conduct did not violate Elkins' constitutional rights.

On the other hand, even if Officer Pelayo's actions somehow violated a constitutional right, Plaintiffs have not satisfied the second prong of the qualified immunity analysis. "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are]

---

[4] The majority notes that there is conflicting evidence regarding whether Officer Pelayo had been told that Elkins was possibly armed. Maj. Op. 5. Because we are at summary judgment, this conflict must be resolved in Elkins' favor. *Kirkpatrick*, 843 F.3d at 788. However, the fact that Officer Pelayo did not know whether Elkins was armed is not dispositive. Officer Pelayo knew that Elkins was dangerous and was willing to use deadly force to escape capture, because Elkins had rammed an occupied police vehicle and nearly ran over Officer Marvin.

sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Jones v. Las Vegas Metro. Police Dep't,* 873 F.3d 1123, 1130 (9th Cir. 2017) (alterations in original) (quoting *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011)). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Ashcroft*, 563 U.S. at 741). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Here, even the majority admits Officer Pelayo's use of deadly force may not have violated Elkins' rights. Indeed, *Cruz* appears to foreclose any other conclusion. *See Cruz*, 765 F.3d at 1078. Thus, Officer Pelayo is entitled to qualified immunity.

IV

We may not absolve Plaintiffs of their burden of presenting evidence sufficient to survive summary judgment, no matter the tragic circumstances in a case. Here, there is no evidence to contradict Officer Pelayo's statement that Elkins (who had previously tried to run over an officer with his car to escape capture) reached for his waistband. Rather, all of the circumstantial evidence is consistent with Officer Pelayo's statement. Thus, no reasonable jury could find that Elkins

7

did not reach.

The majority fails to cite any evidence in the record sufficient to convince a reasonable jury that Elkins did not reach for his waistband. Construing the facts cited by Elkins in his favor, 1) Officer Pelayo was not told that Elkins was armed with a gun, 2) the officers did not find a weapon when they searched Elkins after the shooting, and 3) Elkins' wounds had a back-to-front trajectory. However, none of this evidence shows that Elkins did not reach into his waistband. First, even though Officer Pelayo did not know whether Elkins was armed, Officer Pelayo was aware that Elkins had used deadly force against an officer in order to evade capture. Second, the fact that the officers did not find a weapon when they searched Elkins does not prove that Elkins did not reach into his waistband. Rather, it merely evidenced that he did not reach into his waistband to retrieve a weapon. Instead, there are other reasons Elkins may have reached into his waistband. As previously noted, Elkins may have reached to grab the methamphetamine pipe or to pull up his baggy pants. Third, Plaintiffs' own expert stated that, based on the trajectory of some of the gunshot wounds, "[o]ne, possible conclusion is if Elkins had bladed himself as described by Officer Pelayo." Thus, the back-to-front trajectory of Elkins' wounds is consistent with Officer Pelayo's testimony. Consequently, these facts are insufficient to convince a jury by a preponderance of

the evidence that Elkins did not reach for his waistband, because these facts do not contradict Officer Pelayo's testimony.

Faced with these facts, the majority misapplies the summary judgment standard to reach its outcome. "At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party *only if there is a 'genuine' dispute as to those facts.*" *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis added) (quoting Fed. R. Civ. P. 56(c)). "As [the Supreme Court has] emphasized, '[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986)). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986)). Here, there is no evidence that Elkins did not reach for his waistband nor is there evidence that contradicts Officer Pelayo's statement. Thus, we must grant summary judgment; we cannot deny summary judgment based on mere speculation or "some metaphysical doubt." *Id.*

Finding no direct or circumstantial evidence to preclude summary judgment,

the majority treats evidence that Officer Pelayo has purportedly lied on a prior occasion as substantive evidence that Officer Pelayo's statement is false. The Federal Rules of Evidence prohibit the majority's approach.[5] Under Rule 404(b), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."[6] Fed. R. Evid. 404(b)(1). Our precedent is consistent with the Federal Rules of Evidence. Our cases demonstrate that *internal inconsistencies* in an officer's testimony coupled with *contradictory* circumstantial evidence can be used as substantive evidence that the officer is lying on a particular occasion. *Gonzalez v.* 747 F.3d at 795. For instance, in *Cruz*, the court

---

[5] The majority insinuates that the evidence of Officer Pelayo's prior conduct might be admissible as substantive evidence under Rule 404(b)(2). However, the majority fails to present any theory for how this evidence could possibly fall within the requirements of Rule 404(b)(2). Instead, the majority avoids the issue by stating the question of admissibility need not be decided at this point. The majority is wrong; admissibility must be decided now, because "[a] trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). Indeed, the district court ruled on the admissibility of the evidence regarding Officer Pelayo's prior acts and held that it was admissible only for impeachment purposes and not as substantive evidence.

[6] Rule 608(b) allows a party to question a witness on cross-examination regarding a prior act that brings the witness's credibility into doubt, but only for purposes of impeachment. Fed. R. Evid. 608(b). Nothing allows a party to introduce evidence of a witness's untruthful character as substantive evidence of lying on a particular occasion.

10

relied on contradictory physical evidence and inconsistent eyewitness testimony to preclude summary judgment. *Cruz*, 765 F.3d at 1079-80. In *Gonzalez*, the officer's testimony could support two versions of the facts. *Gonzalez*, 747 F.3d at 795. Thus, summary judgment was inappropriate, because the jury "could accept at face value [the officer's damaging] statements." *Id.* In *Estate of Lopez*, the court affirmed the district court's denial of summary judgment, "[i]n *light of the plaintiffs' evidence*, and the *inconsistencies* in [the officer's] testimony." *Estate of Lopez by & through Lopez v. Gelhaus*, 871 F.3d 998, 1009 (9th Cir. 2017) (emphasis added). These cases all confirm that "where the best (and usually only) witness who could offer direct testimony for the plaintiff about what happened before a shooting has died, our precedent permits the decedent's version of events to be constructed circumstantially *from competent expert and physical evidence, as well as from inconsistencies in the testimony of law enforcement*." *George v. Morris*, 736 F.3d 829, 834 (9th Cir. 2013) (emphasis added). The majority does not cite and cannot cite to a case where evidence of an officer's character for untruthfulness alone created a genuine dispute of fact. Indeed, such evidence cannot be used to show the officer is lying. Fed. R. Evid. 404(b). Thus, the majority errs in finding a genuine dispute regarding whether Elkins reached into his waistband.