**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JENNIFER CRUZ, Individually and on behalf of the estate of Ceasar Cruz, and as guardian ad litem for R.C., C.C., C.C., and M.C., all minors; THERESA SMITH, Individually, and as guardian ad litem for M.C., a minor; LEONARD CRUZ, Individually, *Plaintiffs-Appellants*, | No. 12-55481 D.C. No. 2:10-cv-03997-MMM-JEM |
| v. | OPINION |
| THE CITY OF ANAHEIM, a Governmental Entity; CHIEF JOHN WELTER; DEPUTY CHIEF CRAIG HUNTER; OFFICER MICHAEL BROWN, Individually; OFFICER BRUCE LINN, Individually; OFFICER KELLY PHILLIPS, Individually; OFFICER NATHAN STAUBER, Individually; OFFICER PHILLIP VARGAS, Individually, *Defendants-Appellees*. | |

Appeal from the United States District Court
for the Central District of California
Margaret M. Morrow, District Judge, Presiding

Argued and Submitted
January 10, 2014—Pasadena, California

Filed August 28, 2014

Before: Alex Kozinski, Chief Judge, Richard R. Clifton, Circuit Judge, and Jed S. Rakoff, Senior District Judge.[*]

Opinion by Chief Judge Kozinski

**SUMMARY**[**]

**Civil Rights**

The panel affirmed in part and reversed in part the district court's summary judgment and remanded in an action brought by the relatives of Cesar Cruz, who was shot and killed by City of Anaheim police officers.

Four of the officers alleged that they shot Cruz after he exited his vehicle and reached for what they believed was a gun in the waistband of his pants. The panel held that given the curious and material factual discrepancies, including that Cruz did not have a gun on him and was still suspended by his seat belt when he was shot, the district court erred in ruling that only an unreasonable or speculative jury could disbelieve the officers' version of events. As to those individual officers and the City defendants (the City of

___

[*] The Honorable Jed S. Rakoff, Senior District Judge for the U.S. District Court for the Southern District of New York, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Anaheim, Chief Welter and Deputy Chief Hunter), the panel reversed the district court's summary judgment. The panel made no determination about the officers' credibility, leaving that issue to the jury. The panel affirmed the summary judgment in favor of a fifth officer, who testified that he couldn't see whether Cruz reached for his waistband, but fired because he  perceived an immediate threat when he heard gunshots.

## COUNSEL

Richard P. Herman (argued) of Newport Beach, California for Plaintiffs-Appellants.

Michael R.W. Houston and Gregg M. Audet (argued) of the City Attorney's Office of Anaheim, California for Defendants-Appellees.

## OPINION

KOZINSKI, Chief Judge:

Nobody likes a game of "he said, she said," but far worse is the game of "we said, he's dead." Sadly, this is too often what we face in police shooting cases like this one.

### I.

In early December 2009, a confidential informant told Anaheim police officer Nathan Stauber that Ceasar Cruz was a gang member who sold methamphetamine and carried a gun. Following this lead, Stauber determined that Cruz was

a discharged parolee whose prior convictions included a felony involving a firearm. Later, the informant told Stauber where Cruz was, what his vehicle looked like and that he was armed with a nine-millimeter. The informant also reported that Cruz was carrying the gun in his waistband and had made it clear that "he was not going back to prison." Stauber sent this information out to several other Anaheim police officers and they converged on Cruz's location with multiple police vehicles, both marked and unmarked.

The officers noticed that Cruz's vehicle had a broken tail light, so they executed a traffic stop. After Cruz pulled into a Walmart parking lot, the police surrounded him with their vehicles. But Cruz attempted to escape, backing his SUV into one of the marked patrol cars in the process. Cruz eventually stopped, and the officers got out of their vehicles with weapons drawn.

Cruz opened his door, and the police shouted at him to get on the ground as he was emerging from the vehicle. According to four of the officers, he ignored their commands and instead reached for the waistband of his pants. Fearing that he was reaching for a gun, all five officers opened fire. They fired about twenty shots in two to three seconds. A bystander, Norman Harms, witnessed most of the event from the other side of Cruz's vehicle, but he could only see Cruz's feet and the top of his head at the time of the shooting, so he didn't see whether Cruz reached for his waistband.

After they ceased firing, the officers approached Cruz's body to find it tangled in his seat belt and hanging from it. After they cut the body loose, they found no weapon on it, but a loaded nine-millimeter was later recovered from the passenger seat.

Cruz's relatives sued the City and the officers, alleging Fourth and Fourteenth Amendment claims, as well as wrongful death under California law. Their theory of the case was that this was an "execution" committed by the Anaheim Police Department with the help of the confidential informant. Pursuant to that theory, they moved to amend their complaint to add claims and parties relating to the shooting of another unarmed man, David Raya, by Anaheim police under very similar circumstances. Plaintiffs later withdrew this motion to amend for reasons that aren't clear from the record.[1]

The district court granted summary judgment to defendants on all claims, finding that Cruz's decedents hadn't presented anything to contest the officers' version of events.

## II.

Usually when we're deciding whether to grant summary judgment for the police in deadly force cases we must wade through the "factbound morass of 'reasonableness.'" *Scott* v. *Harris*, 550 U.S. 372, 383 (2007). Not so here: It would be unquestionably reasonable for police to shoot a suspect in Cruz's position if he reaches for a gun in his waistband, or even if he reaches there for some other reason. Given Cruz's dangerous and erratic behavior up to that point, the police would doubtless be justified in responding to such a threatening gesture by opening fire. Conversely, if the suspect *doesn't* reach for his waistband or make some similar

---

[1] Plaintiffs appeal the district court's denial of their motion to amend, as well as its denial of their motion to depose the confidential informant. We affirm the district court on both counts for reasons we explain in a memorandum disposition we file concurrently with this opinion.

threatening gesture, it would clearly be unreasonable for the officers to shoot him after he stopped his vehicle and opened the door.  At that point, the suspect no longer poses an immediate threat to the police or the public, so deadly force is not justified.  *See Tennessee* v. *Garner*, 471 U.S. 1, 9–12 (1985); *cf. Plumhoff* v. *Rickard*, 572 U.S. ___, No. 12-1117, slip op. at 11 (May 27, 2014).

Thus, we need not worry about the intricacies of police procedure or nuanced questions of force proportionality.  To decide this case a jury would have to answer just one simple question:  Did the police see Cruz reach for his waistband?  If they did, they were entitled to shoot; if they didn't, they weren't.

But for a judge ruling on the officers' motion for summary judgment, this translates to a different question:  Could any reasonable jury find it more likely than not that Cruz *didn't* reach for his waistband?  In ruling for the officers, the district court answered this question "No."  The evidence it relied on in reaching this conclusion—indeed, the only evidence that suggests this is what happened—is the testimony of the officers, four of whom say they saw Cruz make the fateful reach.[2]

---

[2] The fifth, Officer Brown, was standing behind Cruz's SUV on the passenger side, so he couldn't see whether Cruz reached for his waistband; but he too fired because he "perceived that Cruz was exchanging gunfire with" another officer.  Plaintiffs have presented no evidence, circumstantial or otherwise, to doubt Officer Brown's account that he reasonably perceived an immediate threat when he heard gunshots that could have been coming from his fellow officers' weapons, a weapon Cruz was firing or both.  We therefore affirm summary judgment in favor of Officer Brown.

But in the deadly force context, we cannot "simply accept what may be a self-serving account by the police officer." *Scott* v. *Henrich*, 39 F.3d 912, 915 (9th Cir. 1994). Because the person most likely to rebut the officers' version of events—the one killed—can't testify, "[t]he judge must carefully examine all the evidence in the record . . . to determine whether the officer's story is internally consistent and consistent with other known facts." *Id.*; *see also Gonzalez* v. *City of Anaheim*, 747 F.3d 789, 794–95 (9th Cir. 2014) (en banc). This includes "circumstantial evidence that, if believed, would tend to discredit the police officer's story." *Scott*, 39 F.3d at 915.

In this case, there's circumstantial evidence that could give a reasonable jury pause. Most obvious is the fact that Cruz didn't have a gun on him, so why would he have reached for his waistband?[3] Cruz probably saw that he was surrounded by officers with guns drawn. In that circumstance, it would have been foolish—but not wholly implausible—for him to have tried to fast-draw his weapon in an attempt to shoot his way out. But for him to make such a gesture when *no* gun is there makes no sense whatsoever.

---

[3] In the usual case, we review the record "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham* v. *Connor*, 490 U.S. 386, 396 (1989); *Wilkinson* v. *Torres*, 610 F.3d 546, 551 (9th Cir. 2010) (explaining that "the critical inquiry is what [the officer] perceived"). So the fact that Cruz did not have a gun on him normally wouldn't factor into the reasonableness analysis because the officers couldn't know what was (or wasn't) underneath Cruz's waistband. But, because the officers killed Cruz, we must examine whether the officers' accounts are "consistent with other known facts." *Scott*, 39 F.3d at 915. One of those facts is that no gun was found on Cruz (though a gun was found—with the safety on—on the car's passenger seat).

A jury may doubt that Cruz did this. Of course, a jury could reach the opposite conclusion. It might believe that Cruz *thought* he had the gun there, or maybe he had a death wish, or perhaps his pants were falling down at the worst possible moment. But the jury could also reasonably conclude that the officers lied.

In reaching that conclusion, the jury might find relevant the uncontroverted evidence that Officer Linn, one of Cruz's shooters, recited the exact same explanation when he shot and killed another unarmed man, David Raya, two years later under very similar circumstances. Like Cruz, Raya was tracked down after a confidential informant told police that he had a gun and that he "wasn't going back to prison," and, as with Cruz, the tip led to an altercation with Anaheim police that ended with an unarmed Raya biting the dust. Perhaps the most curious similarity: According to the officers who shot the two unarmed men, both reached for their waistbands while the police had their guns trained on them. (One noteworthy difference: Raya was shot in the back because he was running away from Officer Linn when Linn saw him reach for his waistband.) "They both reached for the gun" might be a plausible defense from officers in the line of duty. "They both reached for no gun" sounds more like a song-and-dance.

A jury might find implausible other aspects of the officers' story. For starters, *four* of the officers said they saw Cruz reach for his waistband. A jury might be skeptical that four pairs of eyes had a line of sight to Cruz's hand as he stood between the open car door and the SUV. There is also the fact that Cruz was left-handed, yet two officers attested that they saw Cruz reach for his waistband with his right hand. A reasonable jury could doubt that Cruz would have

reached for a non-existent weapon with his off hand. Then there is the officers' claim that Cruz had "exited" the Suburban, and "stood in the doorway," but after he was killed they had to cut him free from his seat belt because he was "suspended" by it. How does a man who has "emerged fully" from a vehicle, and "turn[ed] to face forward," end up hanging from his seat belt after he's shot? Maybe it's possible. But it's also possible that the officers didn't wait for Cruz to exit his car—or reach for his waistband—and simply opened fire on a man who was trying to comply with their instructions to "[g]et down on the ground."

The testimony of the only non-police eyewitness, Norman Harms, indicates that Cruz's feet indeed made it out of the car, but that Cruz was "slipping on the ground, like kind of falling down," as if he were "tripping." This paints a different picture than the officers' testimony that Cruz had fully emerged from his SUV and was poised to attack. Based on Harms's testimony, a jury might find that Cruz was trying to get out of the car (as he was ordered to do multiple times after he opened his door) but got caught in his seat belt. Were a jury to believe this version of events—which seems no less likely than a man shot while standing next to a vehicle becoming suspended by a seat belt—this would certainly cast doubt on the officers' credibility and lead the jury to find for plaintiffs.

*       *       *

Given these curious and material factual discrepancies, the district court erred in ruling that only an unreasonable or speculative jury could disbelieve Officers Phillips, Vargas, Stauber and Linn's version of events. As to these officers and the *Monell* defendants (the City of Anaheim, Chief Welter

and Deputy Chief Hunter), we reverse. We make no determination about the officers' credibility, because that's not our decision to make. We leave it to the jury. We affirm the summary judgment in favor of Officer Brown.

**AFFIRMED AS TO BROWN; REVERSED AND REMANDED AS TO ALL OTHER DEFENDANTS.**

**Appellants shall recover their costs against all defendants other than Brown. Brown shall recover his costs against appellants.**