NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

FEB 4 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

ANNA CHRISTINE LEWIS; BRADLEY
LEWIS, as Personal Representatives of the
Estate of Bradley Alexander Lewis, Anna
Christine Lewis, Bradley Lewis,
Helen  Stricklen and Ralph Rust Stricklen,

Plaintiffs - Appellees,

v.

CHRIS NANOS, individually and in his
official capacity as Sheriff of Pima County,
Arizona; GILBERT CAUDILLO, Pima
County Sheriff Deputy, individually and in
his official capacity as an employee of the
County of Pima, Arizona, and his official
capacity as Sheriff Deputy of the Pima
County Sheriff's Department; MICHAEL
MOSELEY, Pima County Sheriff Deputy,
individually and in his official capacity as
an employee of the County of Pima,
Arizona, and his official capacity as Sheriff
Deputy of the Pima County Sheriff's Office;
COUNTY OF PIMA,

Defendants - Appellants.

No. 25-1025

D.C. No.
4:21-cv-00557-RM

MEMORANDUM*

Appeal from the United States District Court
for the District of Arizona

---

        *        This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Rosemary Márquez, District Judge, Presiding

Argued and Submitted November 19, 2025
Phoenix, Arizona

Before: HAWKINS, HURWITZ, and COLLINS, Circuit Judges.
Concurrence by Judge COLLINS.

In this 42 U.S.C. § 1983 action, Gilbert Caudillo appeals the district court's order denying summary judgment based on qualified immunity. "The purpose of summary judgment is to determine whether there are material factual disputes, not to resolve them." *Dodge v. Evergreen Sch. Dist. #114*, 56 F.4th 767, 780 (9th Cir. 2022). Because the district court properly found the existence of material fact disputes, we affirm.

Caudillo, a Pima County Deputy Sheriff, shot and killed Bradley Alexander Lewis on January 20, 2021. In the weeks prior to Lewis's death, the Sheriff's Department had investigated a series of firearm-related crimes, including assault with a deadly weapon, which Lewis was suspected of committing. Early in the morning of January 20, Caudillo and Pima County Sergeant Michael Moseley, driving separate vehicles, responded to reports that Lewis had been checking for unlocked doors on cars. The officers found Lewis hiding in his truck. They attempted to arrest Lewis, but he drove away to his grandparents' nearby home, resulting in a short car chase. Activating their vehicles' emergency lights and spotlights, the officers followed Lewis into his grandparents' driveway.

Moseley caught up to Lewis first. Moseley drove his vehicle into Lewis's truck to prevent his escape, the two vehicles separated, and then Lewis backed into Moseley's vehicle. Caudillo then arrived. Lewis drove further up the driveway and parked, leaving a small gap between the rear of his truck and the front of his grandfather's truck. Lewis then exited his vehicle from the driver-side door and headed toward the rear of his truck. From here the facts become heavily disputed.

Interviewed on the day of the shooting, Moseley said Lewis was moving "lightning fast" and "was trying to make it into [his grandparents'] house." Moseley stated in that interview that he feared for his life when he saw Lewis get out of his truck holding a black object, a fear he repeated in a declaration two years later. But Moseley also said in the original interview that Lewis never posed a deadly threat to him.

Caudillo testified that he saw Lewis charging at him holding a black object in his hand. Thinking the black object was a gun, Caudillo feared that he would soon be in a "chest to chest" firefight. Caudillo fired three times, hitting Lewis twice, once grazing the arm and once in the torso. Caudillo said he remembers telling the approaching officers that Lewis had a gun. But Moseley testified that Caudillo only said Lewis had "something in his hands." The black object in Lewis's hand turned out to be a key fob and lanyard, and no weapon was found at the scene. Years later,

25-1025

Caudillo was shown a photo of an expert standing still and pointing the key fob at the camera. Caudillo said that was what he saw when he shot Lewis.

Lewis died from his wounds. In this suit, Lewis's parents and grandparents ("Plaintiffs") dispute whether Lewis was charging at Caudillo, citing the narrow gap between the vehicles in the driveway that he would have had to navigate to reach Caudillo. They also presented expert testimony that the fatal bullet travelled from Lewis's shoulder downward and leftward through his torso, supporting their contention that Lewis was not standing erect, but rather moving toward the ground, when struck by the fatal shot.

They also challenge whether Lewis ever got past the gap, citing two blood stains on the ground: the first at the rear of Lewis's truck and the second where Lewis was later moved for medical treatment. And they contest whether Caudillo reasonably mistook Lewis's key fob for a firearm, citing the small size of the two-inch key fob and bright illumination of the scene provided by the police vehicles' spotlights.

Finding a genuine dispute of material facts, the district court denied Caudillo's motion for summary judgment seeking qualified immunity. This appeal followed. We have jurisdiction over an interlocutory appeal of the denial of qualified immunity to review questions of law. *Daniels Sharpsmart, Inc. v. Smith*, 889 F.3d 608, 613 (9th Cir. 2018). We affirm the judgment of the district court.

4                                                                              25-1025

1. At summary judgment, "an officer may be denied qualified immunity in a Section 1983 action only if (1) the facts alleged, taken in the light most favorable to the party asserting injury, show that the officer's conduct violated a constitutional right, and (2) the right at issue was clearly established at the time of the incident such that a reasonable officer would have understood his conduct to be unlawful in that situation." *Longoria v. Pinal Cnty.*, 873 F.3d 699, 704 (9th Cir. 2017) (citation modified). Thus, the initial question is whether there is a material question of fact whether Caudillo's conduct violated Lewis's constitutional rights.

The constitutional right at issue is the Fourth Amendment right to be free from unreasonable seizure. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). In an excessive force case, the analysis must be "from the perspective 'of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight'" and "'allo[w] for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'" *Plumhoff v. Rickard*, 572 U.S. 765, 775 (2014) (quoting *Graham*, 490 U.S. at 396–97). And yet, "in the deadly force context, we cannot simply accept what may be a self-serving account by the police officer." *Cruz v. City of Anaheim*, 765 F.3d 1076, 1079 (9th Cir. 2014) (citation modified). "When a suspect is killed and cannot himself provide an account of what

25-1025

took place, we must examine whether the officers' accounts are consistent with other known facts." *Longoria*, 873 F.3d at 708 (citation modified).

In conducting this analysis, the Supreme Court has directed us to balance the intrusive nature of the force used against the governmental interests at stake. *Graham*, 490 U.S. at 396. *Graham* lists three factors to consider when evaluating the strength of the government's interest in the force used: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.* Taking the facts in the light most favorable to the Plaintiffs, *see Longoria*, 873 F.3d at 704, we agree with the district court that a reasonable juror could conclude Caudillo violated Lewis's Fourth Amendment rights.

The first *Graham* factor, the severity of the crime at issue, turns in part on whether "a significant period of time had elapsed between the commission or attempted commission of these crimes and the point at which deadly force was used." *Hyer v. City & Cnty. of Honolulu*, 118 F.4th 1044, 1061 (9th Cir. 2024). Lewis's suspected firearm crimes are serious, but they occurred weeks before Caudillo shot Lewis. *See id.* at 1052–54, 1061 (finding that a significant period of time had elapsed when officers used deadly force while responding to a crime committed approximately ten hours earlier).

25-1025

As to the second *Graham* factor, Caudillo's testimony that he perceived Lewis as posing a threat to his life is undermined by evidence that Lewis was unarmed, well-illuminated, not charging, not making a threatening gesture, and falling to the ground when the fatal shot was fired. *See Longoria*, 873 F.3d at 705–07 (denying qualified immunity because there was a material dispute whether unarmed suspect had assumed a shooter's stance); *see also Cruz*, 765 F.3d at 1078–80 (denying qualified immunity because there were material disputes whether unarmed suspect made threatening gesture and whether suspect was getting on the ground); *Newmaker v. City of Fortuna*, 842 F.3d 1108, 1116 (9th Cir. 2016) (denying qualified immunity because a reasonable jury could conclude, given the trajectory of the bullets through decedent's body, police officer could not have fired his first shot while decedent was standing up and swinging a baton).

Moreover, inconsistencies between Caudillo's testimony and the physical evidence would allow a reasonable juror to doubt Caudillo's perception. Moseley also testified that Lewis appeared to be attempting to enter his grandparents' home after exiting his truck. *See Longoria*, 873 F.3d at 708 (conflicting accounts by officers and contradictory circumstantial evidence permitted a reasonable jury to discredit officer's perception of threat posed by suspect); *see also Est. of Lopez v. Gelhaus*, 871 F.3d 998, 1012–13 (9th Cir. 2017) (affirming denial of qualified immunity where officers gave differing accounts as to whether decedent turned

25-1025

towards them and what turned out to be a toy weapon resembling an AK-47 appeared to be rising and pointing towards them).

And for the third *Graham* factor, Lewis's attempt at evasion (driving to his grandparents' driveway) was brief, and Caudillo suggested that he did not perceive that to be a threat to public safety. We therefore find that the district court did not err in finding that material questions of fact barred summary judgment on the first prong of the qualified immunity inquiry.

2. The second qualified immunity prong inquires whether "the right at issue was clearly established at the time of the incident such that a reasonable officer would have understood his conduct to be unlawful in that situation." *Longoria*, 873 F.3d at 704 (citation modified). "A right is clearly established when it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (citation modified). The Supreme Court has "repeatedly told courts not to define clearly established law at too high a level of generality." *City of Tahlequah v. Bond*, 595 U.S. 9, 12, (2021). "Such specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (citation modified). But "[t]here need not be a prior case directly

on point, so long as there is precedent placing the statutory or constitutional question beyond debate." *S.R. Nehad v. Browder*, 929 F.3d 1125, 1140–41 (9th Cir. 2019) (citation modified).

Viewed in the light most favorable to Lewis, the facts fall neatly under the long-established principle that a "police officer may not seize an unarmed, nondangerous suspect by shooting him dead." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). Indeed, "few things in our case law are as clearly established as the principle that an officer may not seize an unarmed, nondangerous suspect by shooting him dead in the absence of probable cause to believe that the fleeing suspect poses a threat of serious physical harm, either to the officer or to others." *Torres v. City of Madera*, 648 F.3d 1119, 1128 (9th Cir. 2011) (citation modified).

In *Cruz*, qualified immunity was denied to police officers who shot and killed an unarmed suspect whom they claimed was reaching for his waistband for a gun, but was in fact unarmed. 765 F.3d at 1080. We so held despite evidence that the suspect was known to carry a firearm, had prior convictions for crimes involving a firearm, had attempted to flee, had backed into a police vehicle, had stepped out of the vehicle and—unlike Lewis—had a firearm inside the vehicle. *Id.* at 1077–78. *Cruz* makes clear, taking the facts in the light most favorable to the Plaintiffs, that it would be unlawful to shoot Lewis. Lewis was suspected of committing crimes weeks prior; had attempted to flee but did not pose a danger to public safety during the brief

trip to his grandparent's house; had backed into Moseley's vehicle at a slow speed; but had exited his vehicle apparently in order to enter his grandparents' house; was falling to the ground when fatally shot; was not charging full speed, making a harrowing gesture; and was unarmed.

Defendants argue that *Cruz* is not sufficiently similar because the officers there gave conflicting testimony contradicted by circumstantial evidence, the decedent there was not suspected of assault with a deadly weapon, and he was not holding a black object in his hand while running toward the officers.[1] But the evidence here would allow a reasonable finder of fact to conclude that Lewis was not running at Caudillo, and Lewis need not be suspected of committing the exact same crime as in *Cruz* for the law to be clearly established. *See Hines v. Youseff*, 914 F.3d 1218, 1230 (9th Cir. 2019) ("The qualified immunity analysis does not require a case on all fours.").

3. A reasonable juror might conclude, after hearing all the evidence, that Caudillo violated Lewis's Fourth Amendment rights. Or a reasonable juror could reach a contrary conclusion. But, at this stage of the litigation, neither we nor the

---

[1]     Caudillo also claims that Cruz, unlike Lewis, did not back into an officer's vehicle. That is incorrect. *See Cruz*, 765 F.3d at 1078 ("Cruz attempted to escape, backing his SUV into one of the marked patrol cars in the process. Cruz eventually stopped, and the officers got out of their vehicles with weapons drawn.").

district court are fact finders. We conclude that the district court did not err in denying Caudillo's motion for summary judgment based on qualified immunity.

4. Although state law claims are not generally reviewable in an interlocutory appeal from an order denying qualified immunity, we can exercise pendent jurisdiction to review "inextricably intertwined" issues. *Cunningham v. Gates*, 229 F.3d 1271, 1284 (9th Cir. 2000). An issue is inextricably intertwined when "resolution of the issue properly raised on interlocutory appeal necessarily resolves the pendent issue." *Id.* at 1285. Plaintiffs' state law claims turn on the same standard as their § 1983 excessive force claim. *See* Ariz. Rev. Stat. § 13-410(C)(1); *Longoria*, 873 F.3d at 711. For the same reasons we affirm the denial of summary judgment on Plaintiffs' § 1983 claim, we affirm the district court's denial of summary judgment as to the state law wrongful death and property damage claims.

**AFFIRMED.**

*Lewis v. Nanos*, 25-1025

COLLINS, Circuit Judge, concurring in the judgment:

The Supreme Court has squarely held that, in resolving issues of qualified immunity on summary judgment, courts must adhere to the established rule that the evidence must be viewed "in the light most favorable to the opposing party." *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). That principle is ultimately dispositive of this appeal.

The central issue in this case is whether, at the time that Defendant Deputy Gilberto Caudillo used deadly force against Plaintiffs' decedent Bradley Alexander Lewis, the "facts that were knowable" to Caudillo justified a belief that Lewis was holding a firearm in his hand and pointing it at Caudillo. *Hernandez v. Mesa*, 582 U.S. 548, 554 (2017) (citation omitted); *see also Kingsley v. Hendrickson*, 576 U.S. 389, 399 (2015) (noting that the Court has "stressed that a court must judge the reasonableness of the force used from the perspective and with the knowledge of the defendant officer"). If Caudillo had an objectively reasonable belief that Lewis was brandishing a firearm in his hand as Lewis moved rapidly in Caudillo's direction, there can be little doubt that the use of deadly force was warranted. *See George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013) ("When an individual points his gun in the officers' direction, the Constitution undoubtedly entitles the officer to respond with deadly force." (simplified)). Relying largely on his own testimony

and on that of Sergeant Moseley, Caudillo argues that he had such an objectively reasonable belief and that his shooting of Lewis therefore did not amount to excessive force in violation of the Fourth Amendment.

However, in opposing summary judgment, Plaintiffs presented evidence from which a reasonable jury could find three key facts that would support inferences that would squarely contradict Defendant Caudillo's version of events. First, in light of the evidence concerning how the fatal bullet entered Lewis's shoulder and then traveled downward inside his body, a reasonable jury could conclude that Lewis was in a very substantially crouched or leaning position at the time of the shooting. Second, evidence showing that Lewis had to maneuver between two trucks that were only 4.3 inches apart would support a reasonable inference that Lewis had to move somewhat more slowly, with his body partially turned, as he maneuvered that gap. One of Plaintiffs' experts suggested that the path of the bullet was consistent with Lewis having crouched down to go under the large sideview mirror of his grandfather's truck as he tried to pass through the gap. Third, the position of the pool of Lewis's blood at the scene would support an inference that Lewis never cleared the gap and was shot while crouched down between the trucks.

These facts, and the reasonable inferences that could be drawn from them, would permit a rational jury to reject several aspects of Caudillo's version of

2

events.  In particular, a reasonable jury could reject Caudillo's claims that Lewis "did some kind of leap, stretching out his body," which enabled him "to propel himself through that gap"; that Caudillo first saw the object in Lewis's hand *after* Lewis cleared the gap; and that Caudillo did not shoot until after Lewis was "on the other side" of the gap and was charging right at him, facing him, with the object in his hand, and "was pointing it at [him]."  A rational jury could likewise discount Moseley's testimony that Lewis was moving "lightning fast" and never slowed down as he went through the gap before being shot.

Moreover, given the nature and significance of these conflicting reasonable inferences, a rational jury could decide to set aside, as unreliable or not credible, all insufficiently corroborated aspects of Caudillo's testimony.  Consequently, after observing how Caudillo testifies at trial, a reasonable jury could choose to believe or to disbelieve his crucial claims that he thought the black object was a gun or that Lewis was pointing the object at him.  And if the jury disbelieves Caudillo, it could rationally find that Caudillo shot Lewis while he was crouched down trying to maneuver between the trucks; that Caudillo did not actually believe that the object he saw was a gun when he fired; that Lewis did not point the object at Caudillo; and that, indeed, Caudillo is lying in claiming otherwise as to each of these key points.  Alternatively, the jury could choose to believe Caudillo's testimony entirely and to discount any possible mistakes in his testimony as due to the

3

imperfections of trying to recollect the details of a very brief, high-stress event. But there has to be a trial to sort this out. What matters for purposes of this appeal is that a rational jury could find a set of facts that is so highly adverse to Caudillo that, based on those facts, this is an obvious case in which every reasonable officer would know that shooting Lewis was unlawful. On that basis, I concur in the judgment affirming the denial of qualified immunity. *See Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) ("A right is clearly established when it is sufficiently clear that *every reasonable official* would have understood that what he is doing violates that right." (emphasis added) (simplified)).[1]

---

[1] I would decline to expand the scope of this interlocutory appeal to address the pendent state law claims that remain in this case.