**NOT FOR PUBLICATION**
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

**FILED**

JUN 22 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

CHELSEA DIAMOND, as personal representative of the estate of, DOUGLAS DIAMOND, deceased,

        Plaintiff - Appellee,

  v.

SEAN COLLINSON,

        Defendant - Appellant,

and

CITY OF SANDY, a municipal corporation, COUNTY OF CLACKAMAS, WILLIAM WETHERBEE,

        Defendants.

No. 25-2393

D.C. No.
3:22-cv-00346-SI

MEMORANDUM*

CHELSEA DIAMOND, as personal representative of the estate of DOUGLAS DIAMOND, deceased,

        Plaintiff - Appellee,

  v.

WILLIAM WETHERBEE,

No. 25-2561

D.C. No.
3:22-cv-00346-SI

---

    *     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

and

SEAN COLLINSON, CITY OF SANDY, a municipal corporation, COUNTY OF CLACKAMAS,

Defendants.

Appeal from the United States District Court
for the District of Oregon
Michael H. Simon, District Judge, Presiding

Argued and Submitted May 20, 2026
Seattle, Washington

Before: TALLMAN, CLIFTON, and R. NELSON, Circuit Judges.

Douglas Diamond was shot and killed during an altercation arising out of a welfare check by Clackamas County and City of Sandy, Oregon, law enforcement officers. Diamond's estate sued the City of Sandy, Officers Michael Boyes and William Wetherbee, along with Clackamas County and Sheriff's Sergeant Sean Collinson, alleging violations of Diamond's rights under the Fourth and Fourteenth Amendments and Oregon state law. At summary judgment, the district court concluded that the officers were not entitled to qualified immunity because (1) triable issues of fact existed as to whether their use of force was excessive; (2) the law clearly established that their conduct was unlawful; and (3) Sergeant Collinson

was potentially liable for Officer Wetherbee's and Officer Boyes's conduct under the integral participant doctrine.

On interlocutory appeal, Officer Wetherbee and Sergeant Collinson now challenge the district court's denial of qualified immunity as a matter of law.[1] We have jurisdiction under 28 U.S.C. § 1291. "Reviewing de novo [] the district court's qualified immunity decision," *Fuhr v. City of Seattle*, 175 F.4th 1081, 1085 (9th Cir. 2026) (citation omitted), we hold that the district court erred on the second prong of the qualified immunity analysis and reverse its decision as to Wetherbee and Collinson. In light of our disposition, the case will proceed in district court on the excessive force, failure to train, and state law claims against the City of Sandy, County of Clackamas, and Officer Boyes.

1.    Police officers are entitled to qualified immunity "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018) (citation omitted). We may address these prongs in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). However, our review is limited on interlocutory appeal. Specifically, "[a]ny decision by the district court

---

[1] The City of Sandy and Clackamas County did not appeal the district court's denial of summary judgment. We granted Officer Boyes's motion to voluntarily dismiss his appeal in a separate order. We therefore resolve the question of qualified immunity only as to Officer Wetherbee and Sergeant Collinson.

'that the parties' evidence presents genuine issues of material fact is categorically unreviewable on interlocutory appeal.'" *George v. Morris*, 736 F.3d 829, 834 (9th Cir. 2013) (quoting *Eng v. Cooley*, 552 F.3d 1062, 1067 (9th Cir. 2009)).

In this case, we do not believe that interlocutory appeal is the appropriate procedural stage to resolve the heavily factual question of excessive force. The district court found multiple genuine disputes of fact that prevented qualified immunity at summary judgment, including whether Diamond posed an immediate threat when Officer Wetherbee fired beanbag rounds and Sergeant Collinson deployed his TASER. Accordingly, we do not decide whether a Fourth Amendment violation occurred under these circumstances.

2. However, the limitations on our review at this interlocutory stage do not prevent us from considering whether the alleged violation "was in contravention of federal law that was clearly established at the time." *Villanueva v. California*, 986 F.3d 1158, 1165 (9th Cir. 2021) (citation omitted). We do so now, "construing the facts and drawing all inferences in favor of Plaintiff[]." *Id.* (citation omitted).

A determination that the law was clearly established requires the court to "identify a case where an officer acting under similar circumstances was held to have violated the Constitution." *Zorn v. Linton*, 146 S. Ct. 926, 930 (2026) (per curiam) (citation modified). While "a case directly on point" is not required, "existing precedent must have placed the statutory or constitutional question beyond debate,"

4  25-2393

making it "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11–12 (2015) (per curiam) (citation modified). This "is especially important in the Fourth Amendment context," because "'[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.'" *Id.* at 12 (quoting *Saucier v. Katz*, 533 U.S. 194, 205 (2001)).

Mindful of the specificity required, we find no clearly established law in our precedents that put Wetherbee and Collinson on notice that the use of less-lethal force to disarm an irrational and suicidal individual armed with a loaded handgun in his pocket would violate Diamond's Fourth Amendment rights under the unique circumstances of this case. Several 911 calls were made the day before and the day of the incident regarding Diamond's suicidal threats and troubled mental condition. Those calls were initially handled with telephone contact between the Sheriff's Office and Diamond. The officers finally initiated a face-to-face welfare check in response to yet another call from Diamond's son-in-law, who believed he had heard a gunshot in the background while on the phone with Diamond. The officers knew Diamond was agitated, intoxicated, armed, and that he was a former law enforcement officer. They knew he was holding a gun in the kangaroo pocket of his sweatshirt. Diamond repeatedly refused to comply with orders to remove his hands

from that pocket. Wetherbee issued a less-lethal force warning, yet Diamond still refused to comply by showing his hands outside the pocket, at which point Wetherbee then fired the beanbag rounds.

Accordingly, the circumstances of this case do not present the same sort of features that we have previously held to constitute excessive force. *Cf.*, *e.g.*, *Estate of Lopez v. Gelhaus*, 871 F.3d 998, 1003–04 (9th Cir. 2017) (officers fatally shot thirteen-year-old holding toy gun; factual dispute as to position and movement of toy gun); *Cruz v. City of Anaheim*, 765 F.3d 1076, 1078–79 (9th Cir. 2014) (force would be excessive if officers fatally shot a suspect who did not reach for his waistband or make a threatening gesture); *George*, 736 F.3d at 832–33 (officers fatally shot a man with a walker who was "holding a gun with the barrel pointing down"; factual dispute as to whether he "manipulated the gun, or pointed it directly at deputies"); *Glenn v. Wash. Cnty.*, 673 F.3d 864, 873–75 (9th Cir. 2011) (officers fired beanbag rounds and fatally shot a teenager holding a three-inch pocketknife to his own neck; factual dispute as to whether he heard or understood orders to comply); *Deorle v. Rutherford*, 272 F.3d 1272, 1276, 1281–82 (9th Cir. 2001) (officer shot an unarmed, compliant man in the face with a beanbag even though the

officer had a clear line of retreat and man had been under observation for roughly 40 minutes).[2]

All Diamond had to do was pull the trigger and fire the weapon through the sweatshirt pocket when he refused to comply with the officers' repeated commands to show his hands. "Because no case clearly established a Fourth Amendment right violated by [Officer Wetherbee or Sergeant Collinson]" to deploy less-lethal force to disarm Diamond, "[they are] entitled to qualified immunity." *Fuhr*, 175 F.4th at 1086. The district court erred in not heeding the Supreme Court's directive in *Graham v. Connor*, 490 U.S. 386, 397 (1989), that officers are entitled to some breathing room in addressing "circumstances that are tense, uncertain, and rapidly evolving." This is a textbook example of how the Supreme Court has told us to employ qualified immunity analyses.

3.      Finally, we conclude that the district court also erred in holding that Sergeant Collinson could be liable for the lethal shooting as an "integral participant." *See Peck v. Montoya*, 51 F.4th 877, 891 (9th Cir. 2022) (describing two pathways for liability under the integral participant doctrine). First, Collinson, Wetherbee, and Boyes may have agreed to a common plan to approach Diamond to peacefully

---

[2] We are especially mindful of the Supreme Court's instruction to us in *Kisela v. Hughes* "not to read [our] decision in [*Deorle*] too broadly in deciding whether a new set of facts is governed by clearly established law." 584 U.S. 100, 104 (2018) (per curiam) (citing *City and County of San Francisco v. Sheehan*, 575 U.S. 600, 614–16 (2015)).

resolve the situation, but Collinson "had no reason to know that an *unconstitutional* shooting would take place." *Id.* Nor did he "acquiesce[] in the constitutionally defective conduct as part of [the] common plan." *Id.*

The officers arrived at the scene after multiple 911 calls about an armed individual who was intoxicated, behaving erratically, and threatening suicide. Diamond repeatedly refused to take his hands out of his sweatshirt pocket, which contained a loaded gun. It does not seem unreasonable for the officers "to [have] treat[ed] the situation as a potentially hostile and dangerous encounter, justifying their decision to" implement a plan that included a less-lethal option and lethal cover as a last resort. *Id.* at 892.

Second, given the situation, the officers were justified in their decision to approach the scene with less-lethal and lethal cover. The purpose of lethal cover is to ensure that deadly force is available if it becomes justified in defense of officers otherwise engaged in deploying less-lethal alternatives or if the actions of the subject justify self-defense. So, when Collinson physically charged Diamond after the ineffective TASER deployment, he may have reasonably known that a shooting could occur, but he had no reason to foresee that an *unconstitutional* shooting would occur. No existing caselaw clearly established that it was unlawful for officers to try to resolve this extremely dangerous situation by deploying less-lethal force. We

therefore hold that Sergeant Collinson cannot be held liable as an integral participant for the use of the alleged excessive force by Officer Boyes.

Costs are awarded to Defendants-Appellants William Wetherbee and Sean Collinson.

**REVERSED and REMANDED.**